42 P.3d 1278 (2002)
146 Wash.2d 90
STATE of Washington, Respondent,
v.
Vincent Lee BRYANT, Appellant.
No. 69788-4.
Supreme Court of Washington, En Banc.
Argued February 1, 2001.
Decided April 4, 2002.
*1279 David A. Trieweiler, Seattle, for Appellant.
Jim Krider, Snohomish County Prosecutor, Charles Franklin Blackman, Deputy, for Respondent.
CHAMBERS, J.
The question is whether one county prosecutor may bind another county to a use/derivative use immunity agreement without the latter's knowledge and/or consent. Specifically, we have been asked to hold that an informal immunity agreement entered into by one prosecuting attorney is binding upon a neighboring prosecuting attorney; we decline to do so. We have also been asked to hold one county is estopped from using witness evidence, which had been suppressed as impermissible fruit of a bargained for immunity agreement in another county; we decline to do so. We do hold, however, under the facts of this case, that the doctrine of fundamental fairness which attaches to all agreements for which prosecutors barter leniency for waiver of the right against self-incrimination, requires dismissal of certain charges against the Petitioner in this matter. Therefore, we reverse the Court of Appeals decision with instructions to dismiss the charges in question.

FACTS
Between October 1993 and March 1994, a series of robberies were committed along the I-5 corridor in the counties of Cowlitz, King, and Snohomish. Law enforcement suspected the same persons had committed the crimes: Vincent Bryant, Jeffrey Dorman, and Willie King. However, the police did not have any physical evidence clearly linking any of the suspects to the crimes.
The case at issue involves a Snohomish County home invasion robbery. On the morning of November 5, 1993, three armed men wearing masks and gloves forcibly entered the residence of Steven and Cindy Linari, where they and their adolescent son were bound and robbed. The case was assigned to the Everett Police Department and was closed as unsolved in April or May 1994.
Bryant was later arrested on an unrelated charge in King County and offered to provide the King County prosecutor with information about the unsolved robberies that occurred along the I-5 corridor. Bryant accepted King County's offer of use/derivative use immunity and in turn offered statements *1280 incriminating himself, Dorman, King, and David Israel.[1] The immunity agreement was broad in its promises. The text of the immunity agreement provides, in relevant part:
To protect your rights and to encourage you to be completely candid and truthful, we have agreed to grant you use and derivative use immunity for purposes of a debriefing session. Use and derivative use immunity means that nothing you reveal can ever be used against you in any prosecution. Additionally, nothing you reveal can be utilized by law enforcement to find additional evidence to use against you. This promise of use immunity does not extend to self-incrimination with respect to any other possible crimes of violence such as murder, rape, or arson.
. . . .
If you abide by the terms of this letter you are assured that all the information you provide will be closely held by this office, unless, and until a formal cooperation agreement is reached. Additionally nothing you say during the interview will be used in any way against you, even should no agreement be reached.
My signature below indicates the King County Prosecuting Attorney's Office's agreement to the terms of this letter.
Clerk's Papers (CP) at 71-72.
According to the record, Bryant was interviewed by the King County prosecutor's office on four separate occasions. No Snohomish County representative was a party to the informal immunity agreement between King County and Bryant, nor did any representative attend the interviews. In fact, Snohomish County contends it was not aware the King County meetings had taken place and the substance of Bryant's testimony was never shared with any Snohomish County representatives. According to Snohomish County, this nonsharing was deliberate, to avoid tainting any possible subsequent Snohomish County prosecution of Bryant with his own immunized statements. Snohomish County understood it was prohibited from obtaining and using Bryant's immunized statements.
After plea negotiations between Bryant and King County prosecutors broke down, King County prosecutors contacted Dorman. On November 21, 1996, King County prosecutors offered Dorman the same use/derivative use immunity agreement previously signed by Bryant, which Dorman executed. Over the course of approximately six months, Dorman gave immunized and incriminating statements, implicating himself, Bryant, King, and Israel.
On December 2, 1996, King County charged Bryant, Dorman, King, and Israel with 41 counts of money laundering, robbery, kidnapping and residential burglary. The Linari home invasion robbery in Snohomish County was included among the charges.
In April 1997, the King County trial court severed Bryant from being tried with his codefendants. Based upon venue objection by Bryant, the King County trial court also dismissed the Snohomish County charges without prejudice.
Five months later, a Snohomish County representative met with and entered into an informal use/derivative use immunity agreement with Dorman by adding Snohomish County to the immunity agreement between Dorman and King County. The Snohomish County prosecutor then refiled the Linari robbery and kidnapping charges against Bryant. The Snohomish County case against Bryant was based almost entirely upon the anticipated testimony of Dorman, who had now been granted immunity by the counties of King and Snohomish.
Bryant moved the trial court to suppress the testimony of Dorman and to dismiss the remaining charges filed in King County. Bryant alleged the King County case against him was based upon Dorman's testimony, which was derived from his own immunized statements and therefore was in violation of his immunity agreement with King County. The King County trial court dismissed all counts against Bryant, except four for which *1281 it found an independent evidentiary basis, and specifically declined to address the Linari case pending in Snohomish County.
Bryant then moved to suppress Dorman's statements in Snohomish County. The Snohomish County trial court determined collateral estoppel applied and suppressed all of Dorman's statements reasoning, "whether Jeff Dorman's decision to cooperate with the State in the present case is derived from Vincent Bryant's immunized cooperation in King County is at issue. This is the same issue that was presented ... in the King County case." CP at 12. Based upon this finding, Snohomish County conceded it lacked probable cause to proceed without Dorman's statements which resulted in the dismissal of all charges against Bryant related to the Linari robbery. Id. Snohomish County appealed.
The Court of Appeals reversed the Snohomish County trial court's dismissal of all charges, determining although the factual issue before the Snohomish County trial court was the same as that in King County,[2] the legal issue was different.

ISSUE PRESENTED
This is a case of first impression: does an informal use/derivative use immunity agreement, which purports to grant immunity for incriminating statements that "can [n]ever be used against you in any prosecution," entered into by one state prosecutor bind another state prosecutor from a sister county?

ANALYICAL APPROACHES
While no court has addressed the specific issue before us, agreements between law enforcement officials and the accused have generated a substantial body of precedent. Courts have resorted to a patchwork of statutory, contract, equitable and fifth amendment due process analytical approaches to address related issues.
Here, both parties have offered arguments grounded in traditional contract law. While useful by analogy, contract law assumes a fairly bargained for agreement and the remedies are intended to provide the parties with the benefit of their agreement or return them as nearly as practical to their preagreement position; neither the assumption nor remedies squarely fit the reality of criminal prosecutions. State v. Reed, 75 Wash.App. 742, 879 P.2d 1000 (1994). Both parties also argue cases involving plea bargains, but the only remedies available for breach of a plea agreement are specific performance or withdrawal of the plea. Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). A violation of an agreement to induce an accused to waive the fifth amendment right against self-incrimination, if one is found, may require the crafting of a remedy consistent with the scope of the privilege against self-incrimination. Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). Thus, while useful, plea bargains differ from grants of informal immunity.
We have been urged to look at the federal system for guidance where the agreement of one federal prosecutor may bind other federal districts.[3] Our state system differs from the federal system where all prosecutors must answer to the single United States attorney general. We are also referred to cases holding that one state's attorney general may not bind another state's attorney general. Louisiana v. Edmondson, 97-2456 (La.7/8/98), 714 So.2d 1233. But here we are not dealing with a question of federalism, *1282 rather a question of intra-jurisdictional authority. Yet, while not dispositive, these many explorations into the issues and principles of our criminal justice system provide us with a framework for analysis.
The type and scope of the immunity agreement is important to any analysis. Immunity agreements may be either formal or informal. Formal immunity is imposed upon an unwilling witness. The government may compel testimony from an unwilling witness who invokes the fifth amendment privilege against compulsory self-incrimination, by conferring upon the witness immunity. When first confronted with this issue, the United States Supreme Court held unconstitutional an 1868 statute which required testimony over a refusal to testify on fifth amendment grounds because the protection the statute provided a witness was not "coextensive" with that afforded by the fifth amendment. Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892). While the ability of the government to compel testimony in exchange for a grant of immunity is now well established, this formal immunity process is cloaked with a high degree of constitutional protection.
Informal immunity is a grant of immunity to a willing witness. Usually an accused or a suspect trades information and testimony to enable the State to make a case against other defendants. These agreements are criticized for many reasons from being too lenient on the criminal informer, to being an inducement for criminals to testify to anything to save their own necks. An immunity agreement does not require a plea, but is a deal in which the subject may escape scot free. Accordingly, these informal consensual immunity arrangements have been provided less constitutional protection.
The scope of an immunity agreement may be tailored, but generally falls into two categories: "transactional immunity" and "use/derivative use immunity." Transactional immunity precludes prosecution arising from any transaction about which a witness testifies, while use/derivative use immunity acts only to suppress a witness' testimony and evidence derived directly or indirectly from that testimony. Use/derivative use immunity is favored over transactional immunity by prosecutors because it permits prosecution if the State can show the source of its evidence is wholly independent from and untainted by the fruit of the witness' testimony. It also places the informer exactly where he or she would have been had there been no agreement.
The King County prosecutor and Bryant entered into a negotiated, informal use/derivative use immunity agreement. It is the application of that agreement we review.

COLLATERAL ESTOPPEL ANALYSIS
The trial court and the Court of Appeals both decided this case on collateral estoppel grounds so we will begin our analysis there.
Collateral estoppel applies in criminal cases to bar relitigation of a particular issue or fact previously determined by a valid and final judgment. State v. Williams, 132 Wash.2d 248, 253-54, 937 P.2d 1052 (1997); State v. Peele, 75 Wash.2d 28, 30, 448 P.2d 923 (1968). "Collateral estoppel promotes judicial economy and prevents inconvenience, and even harassment, of parties." Reninger v. State Dep't of Corr., 134 Wash.2d 437, 449, 951 P.2d 782 (1998). Washington courts have never barred a criminal prosecution on the grounds of collateral estoppel.
Generally, collateral estoppel requires:
"(1) the issue decided in the prior adjudication must be identical with the one presented in the second; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea of collateral estoppel is asserted must have been a party or in privity with a party to the prior litigation; and (4) application of doctrine must not work an injustice."
Williams, 132 Wash.2d at 254, 937 P.2d 1052 (quoting State v. Cleveland, 58 Wash.App. 634, 639, 794 P.2d 546 (1990) (quoting Beagles v. Seattle First Nat'l Bank, 25 Wash. App. 925, 929, 610 P.2d 962 (1980))). Each element of the four-part test must be met, id.
In this case, Snohomish County concedes the prosecuting authorities of sister counties within the same sovereign are in privity for *1283 collateral estoppel purposes. Williams, 132 Wash.2d at 256-57, 937 P.2d 1052; State v. Dupard, 93 Wash.2d 268, 273, 609 P.2d 961 (1980); State v. Sherwood, 71 Wash.App. 481, 488, 860 P.2d 407 (1993). And although the other three elements remain disputed, the question specifically posed to this Court is: whether the issue raised and resolved in the King County prosecution is identical to that which Bryant now seeks to bar in Snohomish County.
The King County trial court determined:
The court finds that on this record, Jeff Dorman, as an evidentiary source, was derived directly from Vincent Bryant's immunized testimony.
CP at 39-44. Similarly, the Snohomish County trial court made the following finding:
In light of Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972) and its progeny, whether Jeff Dorman's decision to cooperate with the state in the present case is derived from Vincent Bryant's immunized cooperation in King County is at issue. This is the same issue that was presented to Judge Mertel in the King County case.
CP at 12. However, for the application of collateral estoppel the factual issues between the King and Snohomish prosecutions are different. The issue in Snohomish County must be: can Snohomish County establish affirmatively that it obtained its evidence independently and wholly independent of the immune source? This is a different issue than whether the King County prosecutor has independent evidence. Snohomish County had the right to establish that it had obtained evidence wholly independent of the immune statements. The issues presented in the two hearings different; therefore collateral estoppel does not apply.

CONTRACT ANALYSIS
Courts have found informal immunity agreements to be subject to contract analysis. United States v. Dudden, 65 F.3d 1461, 1467 (9th Cir.1995) (informal immunity agreements are interpreted using the ordinary principles of contract); Anthony v. Cambra, 1999 WL 30538, at *4 (N.D.Cal. 1999), aff'd, 236 F.3d 568 (9th Cir.2000). Generally, the terms of a contract will only bind the parties to the contract. Fisher Flouring Mills Co. v. Swanson, 76 Wash. 649, 668, 137 P. 144 (1913). A person cannot be bound by the terms of a contract of which he knew nothing. Sharpe Sign Co. v. Parrish, 33 Wash.2d 883, 894, 207 P.2d 758 (1949). Because grants of informal immunity are contractual in nature, others not parties to the original agreement cannot be bound. United States v. Turner, 936 F.2d 221, 223 (6th Cir.1991).
Washington courts have acknowledged the principles of ordinary contract law may be used by analogy to assess plea bargain agreements. But our courts have declined to transport the panoply of contract law doctrines in toto into criminal law. Reed, 75 Wash.App. at 744, 879 P.2d 1000. Bargained for cooperation agreements do not fit easily into contract law concepts, which for the most part have evolved from commercial relationships involving the exchange of goods and services for money. Contract remedies often rely upon a payment of money.
The arguments of Snohomish County are persuasive. As the King County trial court found, "[t]he contract language of the immunity agreement is controlling." CP at 40. The parties to the contract were Bryant and the King County prosecuting attorney's office. In return for Bryant's testimony, the King County prosecuting attorney's office promised use/derivative use immunity, and pledged that the information would be closely held by the office.
Additionally the Snohomish County prosecutor's office was not mentioned anywhere in the immunity agreement. It also cannot be ignored that Snohomish County was unaware of King County's two years of ongoing investigation of Bryant and, until October 1996, the immunity agreement between King County and Bryant, as well. It should further be recognized that Snohomish County had not been privy to Bryant's immunized statements to King County representatives. Snohomish County is not bound by King County's immunity agreement with Bryant based upon the principles of contract law.

*1284 AGENCY ANALYSIS
Bryant contends Snohomish County is bound by the King County immunity agreement pursuant to the law of agency. Courts have applied agency principles to determine the scope and validity of immunity agreements.
Actual Authority
Federal formal immunity binds the "government" at large and not just specific United States "districts." United States v. Carter, 454 F.2d 426 (4th Cir.1972). State courts have declined to follow the federal example because federal prosecutors derive their power from a single sovereign whereas state prosecutors are elected by and answerable to their local county or parish constituents. State v. Barnett, 124 Ohio App.3d 746, 754, 707 N.E.2d 564 (1998). Prosecutors in Washington State are elected and subject to recall by the citizens of the county they serve. Wash. Const. art I, § 33. Even the Snohomish County Charter provides for a prosecuting attorney to be elected by the voters of the county.[4] Thus, when read together, the state constitution, relevant statutes, and the county charter of Snohomish all stress accountability of the elected prosecutor to that county's electorate and put limitations on the county prosecutor's power appropriate for a county official. See Wash. Const. art. XI.
County prosecutors are invested by the State with a limited grant of power to represent the State of Washington to enforce the laws of the State within each prosecutor's county. A prosecutor's authority is, with exceptions not relevant here, limited to the county the prosecutor serves. The State grants the same authority to the prosecutors of neighboring counties. The decision whether to prosecute or not, and the decision whether to enter into a plea bargain agreement or not, is generally within the discretion of each county prosecutor. How that discretion is exercised affects the quality of law enforcement and the administration of justice within each county, and thus of vital importance to the separate counties to determine individually the character and emphasis of prosecutions.[5] We fail to find a grant of actual authority, either by the State or Snohomish County to King County, to enter into immunity agreements that bind Snohomish County.
Apparent Authority
In the alternative, Bryant contends King County had apparent authority to bind Snohomish County to his immunity agreement with King County. Apparent authority exists where words or conduct by the principal are reasonably interpreted by a third party as conferring authority upon the agent. Restatement (Third) of Agency § 2.03 (2000). The essence of Bryant's argument is that the State has cloaked each county prosecutor within the State with apparent authority to bind the State. The State grants to county prosecutors the authority to appear and represent the State in criminal proceedings. RCW 36.27.020. The language in the immunity agreement is broad referring to "any prosecution" and "nothing you reveal can be utilized by law enforcement to find additional evidence to use against you." On the other hand, there is nothing within the immunity agreement itself which purports to be on behalf of the State, as the agreement expressly provides, "[m]y signature below indicates the King County Prosecuting Attorney's Office's agreement to the terms of this letter. FOR NORM MALENG, King County Prosecuting Attorney, BARBARA A. MACK." CP at 72.
Here, Snohomish County urges us to rely upon two state plea bargain cases: Barnett, 124 Ohio App.3d 746, 707 N.E.2d 564 and People v. Woods, 169 Ill.App.3d 126, 119 Ill. *1285 Dec. 722, 523 N.E.2d 190 (1988). These cases are easily distinguished. In both cases the courts relied on the fact that neither the bound nor nonbound prosecutor was aware of the alleged criminal activity that later led to charges. Woods, 169 Ill.App.3d at 130, 119 Ill.Dec. 722, 523 N.E.2d 190. In Woods the court declared, "[w]e conclude it would be absurd to hold, without authority, that one county's State's Attorney could bind another county's State's Attorney without the latter's knowledge and approval regardless of court approval." But in Woods the court grounded its decision on an Illinois statute, which sets forth the circumstances under which a plea agreement in one county would bind another county. See former Ill.Rev.Stat. ch. 38, ¶ 1005-4-2(b) (1985) (codified at 6 Ill. Comp. Stat. ch. 730, § 5/5-4-2(b) (West 2000)). Similarly, Barnett relied heavily on the fact each prosecutor's jurisdiction was limited to acts within the prosecutor's boundaries, unless a single crime involved a common course of conduct across county lines in which case the prosecutors conceded one prosecutor could bind another. Unlike other states, a prosecutor in Washington has jurisdiction to prosecute a crime committed in another county subject to timely venue objections. State v. Dent, 123 Wash.2d 467, 472, 869 P.2d 392 (1994).
Apparent authority of an agent can be inferred only from the acts and conduct of the principal; the extent of an agent's authority cannot be established by his own acts and declarations. Lamb v. Gen. Assocs., Inc., 60 Wash.2d 623, 627, 374 P.2d 677 (1962); Fletcher v. W. Am. Ins. Co., 59 Wash. App. 553, 558, 799 P.2d 740 (1990); Equico Lessors, Inc. v. Tow, 34 Wash.App. 333, 338, 661 P.2d 597 (1983). The burden of establishing agency rests upon the one who asserts it. Although it may be possible to establish apparent authority on similar facts, Bryant has failed on the record before us to meet his burden. We hold that Bryant has failed to establish the existence of apparent authority.

FUNDAMENTAL FAIRNESS
Constitutional concerns relevant to this case focus on the integrity of the criminal justice system and fundamental fairness. "There is more at stake than just the liberty of this defendant. At stake is the honor of the government[,] public confidence in fair administration of justice, and the efficient administration of justice in a federal scheme of government." United States v. Carter, 454 F.2d 426, 428 (4th Cir.1972). Constitutional concerns flow from the common law principle that confessions are involuntary when procured by promises or threats from a person in authority. Coerced confessions are unconstitutional.
Every agreement by which a witness or accused waives the fifth amendment right against self-incrimination in exchange for a promise by the government is subject to fundamental fairness under the due process clauses of the fifth and fourteenth amendments. A grant of informal immunity differs from a plea agreement in that it is never formalized by a guilty plea. An informal immunity agreement does not require court approval. On the contrary, it is a promise by the government to do nothing. Plaster v. United States, 789 F.2d 289, 293 (4th Cir. 1986). Fundamental fairness requires that the government be scrupulously fair when honoring the terms of such proposals. In general, "fundamental fairness and public confidence in government officials require that [the government] be held to `meticulous standards of both promise and performance.'" Palermo v. Warden, 545 F.2d 286, 296 (2d Cir.1976) (quoting Correale v. United States, 479 F.2d 944, 947 (1st Cir.1973)). Therefore, the principle of "fundamental fairness" may require that the government perform a promise made by an agent who exceeded his actual authority. Bemis v. United States, 30 F.3d 220, 221 (1st Cir. 1994). "Fundamental fairness" has been applied to informal immunity agreements. United States v. Rodman, 519 F.2d 1058, 1059 (1st Cir.1975) (dismissing on ground of fairness indictment of defendant based on unfulfilled promise of Securities and Exchange Commission attorney to recommend strongly no prosecution); United States v. Carrillo, 709 F.2d 35, 36 (9th Cir.1983) (enforcing promise of drug enforcement agency agents that defendant would not be prosecuted if he cooperated in their investigation *1286 despite apparent lack of participation of a prosecutor in the promise). While courts applying fundamental fairness have not provided us with a precise test or rule, absent credible evidence that the informant testified untruthfully or otherwise failed to perform, the government must scrupulously perform its end of the bargain.
In this case, there is no allegation of prosecutorial misconduct nor do we find any. We do find the doctrine of "fundamental fairness," upon the unique facts of this case, requires dismissal of the Snohomish County charges relating to the Linari case. The pertinent facts are these: both Snohomish County and King County suspected Bryant's involvement in the Linari case and both counties investigated the string of crimes along the I-5 corridor. The Linari case was a specific matter under investigation at the time King County entered into the immunity agreement with Bryant. In fact, Bryant was subsequently charged in King County for the Linari offense, which was committed in Snohomish County. Whether or not the string of crimes along I-5 amounted to a common course of conduct, the King County prosecutor, subject to venue objections, had jurisdiction to prosecute the Snohomish County offense.
The King County prosecutor failed to use any language in the immunity agreement that would inform an accused that the immunity was limited to prosecutions within King County. Indeed, broad sweeping statements such as, "nothing you reveal can ever be used against you in any prosecution," coupled with the Linari case being a specific incident under investigation, could mislead one that the Linari case in Snohomish County was included in the promise of "any prosecution." Relying on a promise of informal immunity, Bryant incriminated himself and Dorman. Dorman was delivered to Snohomish County as a direct product of Bryant's incriminating statements; Dorman then incriminated Bryant. Snohomish County asserts there was no sharing of Bryant's immunized statements. According to Snohomish County, "This non-sharing was deliberate, to avoid tainting any possible subsequent Snohomish County prosecution of the defendant Bryant with Bryant's own immunized statements." CP at 24-26, 197, 222. Thus, Snohomish County concedes it believed it could not profit from the fruits of Bryant's King County admissions. Finally, Snohomish County admits that it cannot prosecute Bryant without Dorman's testimony. All of the foregoing facts lead us to conclude that "fundamental fairness" and the fair administration of justice require dismissal.[6]
Accordingly, we remand to the trial court with instructions to dismiss charges against Bryant relating to the Linari case.
SMITH, J., concurs.
ALEXANDER, C.J. (concurring).
I agree with the majority's conclusion that this case should be remanded to the Snohomish County Superior Court with directions to reinstate its order dismissing the robbery and kidnapping charges that were leveled against Vincent Bryant in that county. I write separately, however, because my reasons for reaching this conclusion differ from those set forth in the majority opinion. In my view the King County prosecuting attorney had actual authority to grant immunity to Bryant for statements he made to investigators in King County from being "used against [him] in any prosecution." Clerk's Papers (CP) at 71 (immunity agreement). This grant of immunity, in my judgment, precluded the prosecutor of Snohomish County from leveling charges against Bryant in that county. I reach these conclusions because I am persuaded that county prosecutors in Washington represent the State, not counties, when they prosecute violations of the law. Consequently, under basic agency principles, an immunity agreement that a defendant and prosecutor execute can, depending on its wording, transcend county boundaries and bind a prosecuting attorney in another county.
Although the majority recognizes that federal courts apply agency principles when presented with this issue and hold that "formal *1287 immunity binds the `government' at large and not just specific United States `districts'" (majority at 1284 (citing United States v. Carter, 454 F.2d 426 (4th Cir.1972)), it concludes that immunity granted by a prosecuting attorney in this State against "any prosecution" is binding only in the county that elected that prosecutor, and is not binding on prosecutors in other counties. In support of this conclusion, the majority cites an Ohio Court of Appeals decision in which the court held that state prosecutors are answerable to their local county voters and their power to bind is, therefore, limited to their county jurisdiction. The majority notes, in that regard, that prosecutors in Washington are elected by the citizens of their county and are subject to recall by the citizens of that county. Consequently, the majority concludes that a prosecutor is merely an agent of the county, not the State.
The authority of a Washington prosecuting attorney to act as an agent of the State of Washington is well established. For example our state constitution directs that "all prosecutions shall be conducted in [the] name and by [the] authority" of the State of Washington. Wash. Const. art IV, § 27. It also provides that the state legislature may remove county prosecuting attorneys from office. Wash. Const. art. IV, § 9. In addition, there are statutes that suggest that a prosecutor is an agent of the State. In that regard, RCW 36.17.020 provides that a portion of the elected prosecutor's salary is paid by the State of Washington. In addition, RCW 36.27.005, consistent with Washington Constitution article IV, section 27, indicates that the elected prosecutor "appear[s] for and represent[s] the state and the counties thereof in actions and proceedings before the courts and judicial officers."
My view that prosecutors act on behalf of the State is in accord with Whatcom County v. State, 99 Wash.App. 237, 993 P.2d 273, review denied, 141 Wash.2d 1001, 10 P.3d 405 (2000), a decision of the Court of Appeals, Division One. There the court determined that county prosecutors are agents of the State when prosecuting violations of state law. In that case, Whatcom County and one of its deputy prosecutors brought an action against the state of Washington, seeking a declaratory judgment requiring the State to defend the deputy prosecutor and, if necessary, indemnify him and the county. This action followed an action by the estate of a murdered woman against Whatcom County and the deputy prosecutor for damages. The basis for the suit for damages was the alleged negligence of the deputy prosecutor in recommending pretrial release of the individual who thereafter committed the murder. The State of Washington had rejected the request of Whatcom County and the deputy prosecutor to defend or indemnify, on grounds that the prosecuting attorney and his deputy prosecutors were not agents of the State.
In reaching its decision, the Court of Appeals indicated that it was influenced by the degree to which the State, rather than the county, exerts control over prosecuting attorneys. The court noted, as I have observed above, that the elected prosecuting attorney's salary is paid, in part, by the State; that the state legislature may remove county prosecuting attorneys from office; and that prosecuting attorneys appear for and represent the State in court. See Whatcom County, 99 Wash.App. at 247-49, 993 P.2d 273. The court observed, additionally, that the attorney general of the State of Washington may "[c]onsult with and advise" prosecutors (RCW 43.10.030(4)) and may "take such action in connection with any prosecution as the attorney general determines to be necessary and proper." RCW 43.10.090. Consequently, the court concluded that "county prosecutors in Washington represent the State, not their counties, when prosecuting violations of state law." Whatcom County, 99 Wash.App. at 250, 993 P.2d 273.[1]
*1288 The court's decision in the Whatcom County case makes sense to me because an agent's actual authority is established based on the objective manifestations of the principal to the agent. Blake Sand & Gravel, Inc. v. Saxon, 98 Wash.App. 218, 223, 989 P.2d 1178 (1999). I cannot imagine stronger manifestations of a prosecuting attorney's actual authority to prosecute on behalf of the State than the aforementioned constitutional and statutory provisions. In reaching this conclusion, I do not mean to suggest that a prosecutor cannot limit a grant of immunity. Clearly, a prosecuting attorney can limit such a grant to prosecutions in the prosecutor's home county by so providing in the immunity agreement. Here that was not done, the agreement indicating in the broadest terms that Bryant's statements and any evidence derived from those statements could not "be used against [him] in any prosecution." CP at 71.
In conclusion, I would hold that the King County prosecutor had actual authority to enter into the immunity agreement with Bryant that provided that his statements and any evidence derived from those statements could not "be used against [him] in any prosecution." Id. That grant of immunity had the effect of precluding the prosecutor of Snohomish County from leveling charges against Bryant in that county that arose from the statements Bryant made to authorities in King County. Because the robbery and kidnapping charges before us arose from evidence derived from statements Bryant made in King County, the charges against him should be dismissed.
Accordingly, I concur in result only.
JOHNSON, MADSEN, SANDERS, JJ., concur.
OWENS, J. (dissenting).
The majority concludes that no rule of law would require the Snohomish County prosecutor to be bound by the terms of the King County immunity agreement. Nevertheless, the majority also concludes that the charges filed in Snohomish County against the defendant should be dismissed based on the doctrine of fundamental fairness. More specifically, the majority suggests that the charges should be dismissed because Vincent Bryant relied on the immunity agreement to protect himself from prosecution in all of the counties in the State of Washington. Since I do not agree that this reliance was reasonable, I respectfully dissent.
Bryant's reliance was not reasonable based upon contract law. Informal immunity agreements are subject to contract analysis,[1]United States v. Plummer, 941 F.2d 799, 802 (9th Cir.1991), and an immunity agreement is only enforceable against the parties who originally created it. See United States v. Peister, 631 F.2d 658, 662-63 (10th Cir.1980), cert. denied, 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981). Because Snohomish County was not a party to the immunity agreement, the Snohomish County prosecutor cannot be bound by the terms of the agreement. According to the agreement, only King County was prevented from using the information provided by Bryant in any prosecution against him. Even if we concluded that the agreement was ambiguous and that any discrepancies should be construed against King County as the drafter, Snohomish County would still not be bound by the agreement. See Universal/Land Constr. Co. v. City of Spokane, 49 Wash.App. 634, 640, 745 P.2d 53 (1987). Moreover, Snohomish County should not be bound by *1289 the agreement because the county did not know about the existence of the agreement and because it never had access to the statements made by Bryant. For these reasons, I agree with the majority's conclusion that the Snohomish County prosecutor is not subject to the immunity agreement.
Similarly, Bryant's reliance was not reasonable based upon agency law. King County had no actual authority to bind Snohomish County because the King County prosecutor is a county official and neither the State of Washington nor Snohomish County has authorized the King County prosecutor to bind Snohomish County in an immunity agreement. The citizens of King and Snohomish Counties each elect their respective county prosecutor (article XI, section 5 of the state constitution) and both prosecutors are subject to recall by the citizens of their respective counties. CONST. art. I, § 33. Thus, the Washington State Constitution clearly provides that prosecutors of each county are accountable to the citizens of their respective counties.
Nor can Bryant argue that the King County prosecutor had apparent authority to bind Snohomish County. When considering whether apparent authority exists, the court must look to the words and conduct of the principal, rather than the agent. Leschner v. Dep't of Labor & Indus., 27 Wash.2d 911, 919, 185 P.2d 113 (1947). In this case, no evidence exists to support the conclusion that the State of Washington or Snohomish County made representations to Bryant that King County could bind Snohomish County through an immunity agreement. Moreover, the agreement itself provided that King County, and not the State of Washington or Snohomish County, agreed to be bound by the terms of the agreement. Because neither the State of Washington nor Snohomish County made any representations to Bryant, I agree with the majority's conclusion that "Bryant has failed to establish the existence of apparent authority" in this case.[2] Majority at 1285.
Despite the fact that the majority concludes that the immunity agreement does not bind Snohomish County based on contract and agency law, the majority nevertheless concludes that the charges against Bryant in Snohomish County should be dismissed based on the doctrine of fundamental fairness. Informal immunity agreements are reviewed for fundamental fairness as is required by the due process clauses in the Fifth and Fourteenth Amendments to the federal constitution. See United States v. Carrillo, 709 F.2d 35, 37 (9th Cir.1983). The United States Supreme Court has explained that the term "fundamental fairness" cannot be precisely defined and that a court must discover what "fundamental fairness" consists of by considering relevant precedents and by assessing the interests that are at stake in the litigation. Lassiter v. Dep't of Soc. Servs., 452 U.S. 18, 24-25, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981).
Fundamental fairness concerns are not implicated in this case. Under the doctrine of fundamental fairness, the government will be required to honor its contractual obligations to a defendant when the defendant has completed his part as was required in the agreement. Rowe v. Griffin, 676 F.2d 524, 528 (11th Cir.1982). According to the terms of the agreement, King County was prohibited from using the information provided by Bryant in any prosecution against him. This contractual obligation owed to Bryant was satisfied when the King County trial court dismissed all claims filed against him. Since Bryant was charged with several offenses in King County, this benefit cannot be classified as illusory. The State has acted fairly toward Bryant because King County was required to comply with the terms of the immunity agreement.
Nevertheless, the majority ignores the fact that this benefit has already been provided to *1290 Bryant and concludes that Snohomish County should also be prevented from prosecuting Bryant. The majority apparently concludes that the charges against Bryant should be dropped because Bryant relied on the agreement to shield himself from prosecution and because he has suffered a detriment to the extent that he could be subjected to prosecution in Snohomish County. This discussion of reliance and detriment suggests that the majority's opinion is based upon the theory of equitable estoppel; however, Bryant cannot establish facts sufficient to prove all the elements of equitable estoppel in this case.
Courts generally do not favor applying equitable estoppel against the government; thus, a party must prove six elements before a court will apply equitable estoppel against the government. Kramarevcky v. Dep't of Soc. & Health Servs., 122 Wash.2d 738, 743, 863 P.2d 535 (1993). In order to establish equitable estoppel, a party must show that:
(1) the government has made a statement or acted in a way that is inconsistent with a previous statement;
(2) the party relied on the previous statement of the government;
(3) the party's reliance on the government's previous statements was justifiable;
(4) the party would be injured by allowing the government to repudiate its original statement;
(5) estoppel should be applied to prevent a manifest injustice; and
(6) government functions would not be impaired despite the application of estoppel.
Id. With the exception of the second element, it is highly questionable whether Bryant could offer sufficient evidence to prove the existence of any of these elements. For example, Snohomish County has never made any contradictory statements or promises to Bryant.[3] Similarly, even if the estoppel could be based on the statements made by King County, the majority concluded that no prosecutorial misconduct has occurred in this case.
Nor can Bryant show that his reliance was justified. By the terms of the contract, the immunity contract bound only King County. Neither the State of Washington nor Snohomish County is mentioned in the agreement. When construing the terms of a contract, the court will consider the document as a whole. Plummer, 941 F.2d at 803. Thus, it would be reasonable to conclude that the promises made in the agreement should apply only to "any prosecution" brought by King County. Similarly, Bryant cannot show that he has suffered an injury through the actions of King County since the charges filed in King County have all been dismissed.
With regard to the element of showing the existence of a manifest injustice, Bryant cannot show that such an injustice exists. The charges filed against him in King County have been dismissed, and, in contrast, it appears that a manifest injustice would occur to his victims in Snohomish County if Snohomish County is prevented from prosecuting Bryant based upon poor legal drafting by King County. Fundamental fairness requires that all implicated interests should be considered, and the interests of Snohomish County and the Linari family, neither of which is a bad actor in this litigation, militate against dismissing the charges in this case. These interests would be even stronger in a situation where Bryant had committed murder or arson and King County had failed to include a provision that the immunity agreement would not apply to these crimes.
Finally, Bryant cannot show that government functions would not be impaired by the application of estoppel in this case. Based on this precedent, the King County prosecutor through poor legal drafting could bind the duly elected county prosecutors in all of the 38 counties in Washington. These other prosecutors have no tangible means for tracking and policing the actions of the King County prosecutor, yet the majority would allow the King County prosecutor to bind them through a poorly drafted immunity *1291 agreement, even though they would be without any meaningful recourse. The majority concedes that the King County prosecutor has no legal authority to bind other county prosecutors; nevertheless, the majority utilizes its own version of fundamental fairness and binds Snohomish County without justifying its conclusion based upon any theory of law.
Because Bryant cannot show that Snohomish County should be bound by the terms of the immunity agreement under any theory of law, I must dissent in this case. Although the majority has also concluded that Snohomish County cannot be bound under contract or agency law, the majority nevertheless concludes that the doctrine of fundamental fairness requires that the charges filed against Bryant in Snohomish County must be dismissed. I do not agree with the majority's opinion because Bryant has already received the benefit contemplated in the immunity agreementKing County has been prevented from using his statements in any prosecution against him. Thus, I would conclude that Snohomish County cannot be bound by the immunity agreement and that the decision of the Court of Appeals should be affirmed.
BRIDGE and IRELAND, JJ., concur.
NOTES
[1] Israel owned the pawnshop where the stolen goods were allegedly fenced and sold to the public.
[2] The Court of Appeals concluded, "[t]he King County court ruled that Dorman, as an evidentiary source, was derived from Bryant's immunized statements. Because, as Snohomish County concedes, its case against Bryant could not proceed without Dorman's testimony, an identical factual issuewhether Dorman's testimony was derived from Bryant's immunized statementswas presented in both cases." State v. Bryant, 100 Wash.App. 232, 237 n. 10, 996 P.2d 646 (2000).
[3] The Principles of Federal Prosecution stipulate: "In entering into a non-prosecution agreement, the attorney for the government should, if practicable, explicitly limit the scope of the government's commitment to: (a) non-prosecution based directly or indirectly on the testimony of other information provided; or (b) non-prosecution within his district with respect to a pending charge for a specific offense then known to have been committed by the person." United States Dep't of Justice, Principles of Federal Prosecution 41 (1980).
[4] Snohomish County Charter § 3.100.
[5] The concurrence concludes that a county prosecutor is an agent of the State. We agreewith some limitation. The grant of authority making a prosecutor an agent of the State is implicitly limited to the prosecutor's county because of the constitutional solicitude for the independence of the various counties as quasi-independent seats of government. See Wash. Const. art. XI. The State's limited grant of authority to county prosecutors generally does not permit them to bind executive officers, nor are they explicitly authorized to bind the prosecutors of neighboring counties.
[6] Following oral argument Bryant moved to supplement the record. The document offered was neither timely nor relevant to the opinion and the motion is DENIED.
[1] Prosecutors are not limited by county boundaries when prosecuting state law. RCW 9A.04.030 subjects any person to criminal jurisdiction in Washington courts when that person commits any part of a crime within the state. Accordingly, prosecuting attorneys may level charges against a defendant for acts committed in other counties. See, e.g., CrR 5.1(b) (when an offense has been committed in one or more counties, the action may be commenced in any such county). Which county is involved is a matter of venue only and is not a jurisdictional element of the crime. State v. McCorkell, 63 Wash.App. 798, 800, 822 P.2d 795, review denied, 119 Wash.2d 1004, 832 P.2d 487 (1992). Indeed, the King County prosecuting attorney originally leveled the kidnapping and robbery charges against Bryant that arose from his actions in Snohomish County. The King County Superior Court dismissed the charges without prejudice when Bryant objected to venue in King County. The Snohomish County prosecuting attorney then refiled the kidnapping and robbery charges in Snohomish County Superior Court.
[1] I agree with the majority's statement that the law of contracts may not always be sufficient to resolve issues raised with regard to the interpretation of immunity agreements. See United States v. Carrillo, 709 F.2d 35, 36-37 n. 1 (9th Cir.1983) ("Cases may arise in which the law of contracts will not provide a sufficient analogy" for deciding issues raised regarding the interpretation of informal immunity agreements.).
[2] I do not, however, agree with the majority's statement that prosecutors in Washington have unrestrained authority to prosecute crimes committed in other counties. Article I, section 22 of the state constitution clearly provides that criminal prosecutions shall take place in the county where the crime allegedly occurred. The right of determining venue belongs to the defendant in a criminal prosecution rather than to the prosecutor, despite the fact that a defendant may waive this right by failing to raise a timely objection. See State v. Dent, 123 Wash.2d 467, 479, 869 P.2d 392 (1994).
[3] It is highly questionable whether equitable estoppel could even be applied against Snohomish County because Snohomish County has not had any direct interaction with Bryant with regard to the immunity agreement.