[No. 43618-0-I.   Division One.   January 31, 2000.]

WHATCOM COUNTY, ET AL., *Respondents*, v. THE STATE OF WASHINGTON, ET AL., *Appellants*.

---

[32]RCW 2.06.040.

238

*Christine O. Gregoire, Attorney General,* and *Catherine Hendricks, Assistant,* for appellants.

*John C. Belcher* of *Belcher, Swanson, Lackey, Doran, Lewis & Robertson*; and *David S. McEachran, Prosecuting Attorney*, and *Randall Joseph Watts, Deputy*, for respondents.

BAKER, J. — Whatcom County Deputy Prosecuting Attorney David Graham was sued for negligence and violation of civil rights pursuant to 42 U.S.C. § 1983. The Washington State Attorney General rejected Graham's request for a state-funded defense. Graham and Whatcom County brought this action against the State, seeking a declaratory judgment ordering the Attorney General to defend Graham and ordering the State to indemnify him. The trial court granted summary judgment to the County, and the State appeals. Because Graham was acting for the State under the facts and circumstances of this case, we affirm.

I

Lloyd J. Monroe was charged with three misdemeanors and one felony involving violations of a protection order obtained by Michelle S. Smith. The misdemeanor charges were resolved at a district court hearing at which the State was represented by Whatcom County Deputy Prosecuting Attorney David Graham, but the felony had been filed in superior court and a $20,000 bail had been set pending trial. As a result, Monroe would have been eligible for release based on the district court proceedings, but not the felony charge still pending in superior court. When queried, Graham advised Jim Weisenburger, a Whatcom County corrections officer, that Monroe could be released from custody.

Monroe was released from the Whatcom County Jail despite the pending felony charge. Three days after his release, Monroe murdered Michelle Smith. The estate of Michelle Smith filed a wrongful death suit against Whatcom County and its deputy prosecutor Graham, alleging negligence as well as violation of Michelle Smith's civil rights pursuant to 42 U.S.C. § 1983.

The Whatcom County Prosecutor tendered Graham's defense to the Attorney General pursuant to RCW 4.92.060[1] and 4.92.070[2] on the grounds that Graham was acting on behalf of the State of Washington, not the County, when he advised Weisenburger that Monroe could be released. The Attorney General refused, however, arguing that Graham was a county employee. Graham and the County then sought a declaratory judgment ordering the Attorney General to defend Graham and ordering the State to indemnify Graham in the damage suit pursuant to RCW 4.92.060, .070, .075,[3] and .130.[4] The parties filed cross-motions for summary judgment. The court found that Graham acted

[1]RCW 4.92.060 states that "[w]henever an action or proceeding for damages shall be instituted against any state officer, including state elected officials, [or] employee . . . arising from acts or omissions while performing, or in good faith purporting to perform, official duties, such officer, [or] employee . . . may request the attorney general to authorize the defense of said action or proceeding at the expense of the state."

[2]RCW 4.92.070 states in pertinent part that "[i]f the attorney general shall find that said officer, employee, or volunteer's acts or omissions were, or were purported to be in good faith, within the scope of that person's official duties . . . said request shall be granted, in which event the necessary expenses of the defense of said action or proceeding relating to a state officer, employee, or volunteer shall be paid as provided in RCW 4.92.130. . . . In such cases the attorney general shall appear and defend such officer, employee, volunteer . . . who shall assist and cooperate in the defense of such suit. . . ."

[3]RCW 4.92.075 states that "[w]hen a state officer, employee, or volunteer has been represented by the attorney general pursuant to RCW 4.92.070, and the body presiding over the action or proceeding has found that the officer, employee, or volunteer was acting within the scope of his or her official duties, and a judgment has been entered against the officer, employee, or volunteer pursuant to chapter 4.92 RCW or 42 U.S.C. Sec. 1981 et seq., thereafter the judgment creditor shall seek satisfaction only from the state, and the judgment shall not become a lien upon any property of such officer, employee, or volunteer."

[4]RCW 4.92.130 creates a "liability account . . . to be used solely and exclusively for the payment of liability settlements and judgments against the

for the State, not the County, and that his purported actions were within the scope of his official duties. The court ordered the Attorney General to defend Graham, pay any necessary expenses of his defense, and pay any judgment entered against him. The State appeals.

## II

On review of a motion for summary judgment, the standard of review is de novo, and the appellate court engages in the same inquiry as the trial court.[5] Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[6]

As a preliminary matter, the State argues that Whatcom County lacks standing to bring this declaratory judgment action because it has no rights that could be affected by RCW 4.92.060. But if the State does not defend and indemnify Graham, the County will be forced to do so. Under the Uniform Declaratory Judgments Act, "[a] person . . . whose rights, status or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights . . . thereunder."[7] The County's interest is sufficient to confer standing.[8]

The State also contends without reference to any supporting authority that Graham lacks standing because he seeks indemnification solely for the benefit of Whatcom

state under 42 U.S.C. Sec. 1981 et seq. or for the tortious conduct of its officers, employees, and volunteers and all related legal defense costs."

[5]*Simpson Tacoma Kraft Co. v. Department of Ecology*, 119 Wn.2d 640, 646, 835 P.2d 1030 (1992).

[6]CR 56(c); *Hontz v. State*, 105 Wn.2d 302, 311, 714 P.2d 1176 (1986).

[7]RCW 7.24.020.

[8]The State argues that *Kitsap County v. City of Bremerton*, 46 Wn.2d 362, 281 P.2d 841 (1955) compels the opposite result. However, that case is not on point. There, the court held that Kitsap County lacked standing to bring a declaratory judgment action challenging the facial validity of a statute because it had no constitutional rights that would be affected by the statute. In contrast, Whatcom County is not challenging the validity of RCW 4.92.060.

County. Graham has standing to request that the court determine whether he has a right to defense and indemnification from the State under RCW 4.92.070, .075 and .130, regardless of whether the County will defend him if he does not.

The State next argues that no government entity is responsible for Graham's acts because Graham was not acting with "final policymaking authority" when he advised Weisenburger that Monroe could be released from custody. The State contends that the final policy-making decision—Monroe's release—was made by Weisenburger. Therefore, according to the State, neither it nor Whatcom County need be involved in Graham's case at all.

The State correctly notes that municipal officials cannot subject the government to § 1983 liability for their actions unless they have final policy-making authority.[9] However, this case does not concern the State's ultimate § 1983 liability, but rather Graham's entitlement to a state defense and indemnification as a "state officer" or "state employee." Under RCW 4.92.070, .075 and .130, the Attorney General shall defend and indemnify the state officer or employee if the acts or omissions at issue were or were purported to be in good faith and within the scope of that person's official duties. Hence, the trial court never reached the question of whether Graham acted with "final policymaking authority." Such a finding would be unnecessary because it is irrelevant to the narrow issue of which entity should defend and indemnify him in the underlying suit. Rather, the court found that Graham was a "state officer" or "state employee" and that his acts were within the scope of his "official duties." The State seems to have misinterpreted this as a finding that Graham acted with "final policymaking authority." Therefore, we will not address the merits of the State's argument on this issue.[10]

The State's central argument is that (1) Graham's ac-

---

[9]*Pembaur v. Cincinnati*, 475 U.S. 469, 483, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986).

[10]RAP 9.12; *Simpson Tacoma*, 119 Wn.2d at 649.

tions constituted "advice to a county official" and, (2) even if Graham's actions could be construed as part of a criminal prosecution, Washington law compels a conclusion that county prosecutors represent the county, not the State, when prosecuting state law. Therefore, the State argues that Graham cannot be a "state officer" or "state employee" entitled to state defense and indemnification. Whatcom County contends that (1) Graham's actions took place within the context of prosecuting Monroe under state law and (2) county prosecutors act for the State when prosecuting state law.

Recently, in *McMillian v. Monroe County*,[11] the U.S. Supreme Court held that Alabama sheriffs represent the state, not their counties, when acting in a law enforcement capacity. The Court utilized a two-step approach in its analysis. The first step is to classify the function that the official was performing at the time of the acts or omissions at issue to determine whether the official acts as a final policy maker for the local government in that particular capacity. This is not an "all or nothing" characterization that holds true for every type of action the officials may engage in. It requires an examination of the acts or omissions at issue in light of the function that the official was performing at the time.[12] The second step is to define the official's functions under relevant state law to determine whether the official acts for the state or the county when performing that function.[13] The Court emphasized that state law cannot definitively answer the question by "simply labeling as a state official an official who clearly makes county policy."[14] Instead, the analysis demands a close look at the official's roles and functions as defined and structured under state law.

The *McMillian* Court was able to skip the first step in

---

[11]520 U.S. 781, 117 S. Ct. 1734, 138 L. Ed. 2d 1 (1997).

[12]*Id.* at 785.

[13]*Id.* at 786.

[14]*Id.*

the analysis because the parties agreed that Alabama sheriffs are final policy makers when acting in a law enforcement capacity.[15] They disagreed, however, about whether sheriffs are policy makers for the state or for the county when acting in that capacity. Thus, in the second step of the analysis, the Court conducted a systematic review of the role of Alabama sheriffs under the Alabama Constitution and Alabama Code.

The *McMillian* Court was highly persuaded by the fact that state entities such as the attorney general, the governor, and the Alabama Supreme Court exert a great deal of control over sheriffs, whereas county commissions do not.[16] It also found that sheriffs are given complete authority to enforce state criminal law in their counties.[17] The Court was not persuaded by the fact that sheriffs are elected locally, that their jurisdiction is limited to their counties, or that they are paid out of the county treasury, because those factors do not constitute substantial county control.[18] The Court weighed these competing factors and concluded that, on balance, Alabama sheriffs represent the state and not the county when acting in a law enforcement capacity.[19]

One year after *McMillian* was decided, the California Supreme Court in *Pitts v. County of Kern*[20] held that California district attorneys act on behalf of the state, not the county, when preparing to prosecute and when prosecuting violations of state law. The *Pitts* court closely followed the *McMillian* analysis and emphasized the degree to which the attorney general exerted supervisory control over district attorneys. The court also noted that district attorneys act in the name of the people of the state when

[15]*Id.* at 785.

[16]*Id.* at 787-92.

[17]*Id.* at 791.

[18]*Id.* at 791-92.

[19]*Id.* at 793.

[20]17 Cal. 4th 340, 949 P.2d 920, 937, 70 Cal. Rptr. 2d 823 (1998).

prosecuting state law.[21] As in *McMillian*, the *Pitts* court was not swayed by the fact that district attorneys are locally elected or that their authority is territorially limited to their counties.[22] The *Pitts* court also noted that many other jurisdictions have reached a similar result.[23]

The *McMillian* and *Pitts* decisions provide us with guidance in determining whether the State or the County is responsible for Graham's defense and indemnification. However, there are two notable differences between those cases and the case at bar. First, in *McMillian* and *Pitts*, the issue was whether counties could be held liable under § 1983 for the actions of certain government officials. Thus, the question of whether the officials acted with "final policy-making authority" was relevant to the decision. Here, we are not concerned with the ultimate question of which government entity (if any) is liable for Graham's acts, but only with the narrow issue of whether Graham is a state officer or employee entitled to a state defense and indemnification. Second, in *McMillian* and *Pitts*, the question of how to properly characterize the officials' functions was not at issue.[24] However, in this case the parties disagree sharply on whether Graham's actions constituted "advice to a county official" or "prosecution under state law." Thus, we must modify the first step of the *McMillian* analysis slightly, but the second step remains identical.

■ Under the first step of our analysis, we omit consideration of whether Graham is a "final policy-maker" and instead decide whether Graham's act of advising Weisen-

---

[21]*Pitts*, 949 P.2d at 932.

[22]*Id.* at 933-34.

[23]*Id.* at 934 (citing *Pusey v. City of Youngstown*, 11 F.3d 652 (6th Cir. 1993); *Arnold v. McClain*, 926 F.2d 963 (10th Cir. 1991); *Owens v. Fulton County*, 877 F.2d 947 (11th Cir. 1989); *Chrissy F. v. Mississippi Dep't of Pub. Welfare*, 925 F.2d 844 (5th Cir. 1991); *Rozek v. Topolnicki*, 865 F.2d 1154 (10th Cir. 1989)).

[24]In *McMillian*, 520 U.S. at 785, the sheriffs were "act[ing] in a law enforcement capacity." In *Pitts*, 949 P.2d at 927, the district attorneys were "establish[ing] policy or train[ing] employees to prepare and prosecute cases involving criminal violations of state law."

burger that Monroe could be released is best characterized as "advice to a county official" or "prosecuting state law." After defining Graham's function in that context, we next analyze the Washington State Constitution and applicable statutes to determine whether Graham was acting for the State or the County when performing that function.

We begin with an examination of Graham's role and function in advising Weisenburger. The State argues that Graham's acts constituted "advice to a county official," which is clearly a county function. According to the State, Graham's action did not stem from his prosecution of Monroe, or even from Graham's participation in a district court hearing regarding Monroe, but solely from his decision to provide advice to a Whatcom County corrections officer. The County maintains that Graham's advice to the corrections officer was part of his prosecution of Monroe for violations of state law, because Graham's act cannot be divorced from its context.

Based upon the stipulated facts in this case,[25] we agree with the County. Graham had just represented the State in a district court hearing involving three of the four charges pending against Monroe. Later at the county jail, Weisenburger asked Graham whether Monroe could be released from custody, and Graham said that he could. Graham was incorrect because the remaining felony charge prohibited Monroe's release. But it is clear that Graham's advice was sought because of his knowledge and familiarity with Monroe's case. Graham's act of advising that Monroe could be released was not merely "advice to a county official," but was directly related to his prosecution of Monroe under state law.

It is not necessary that the acts or omissions at issue be part of the "core" prosecutorial function. It is sufficient

---

[25]The State urges us to consider facts and arguments presented in its supplemental clerk's papers, which were not presented to the trial court below. We decline to do so. A party may not supplement the record on appeal of a motion for summary judgment with materials not presented to the trial court. RAP 9.12. Therefore, our decision is based solely upon the stipulated facts before the trial court.

that they be directly related to the prosecutor's role in prosecuting violations of state law. Of course, not all of a county prosecutor's official duties will fall under this rubric. For example, it is clear that a prosecutor acts for the county when performing administrative tasks unrelated to strictly prosecutorial functions (such as hiring or promotion decisions).[26] But Graham's act was not such an administrative task. He had just prosecuted Monroe under state law, and the jailer asked for Graham's advice because of that fact. Graham's functional role under the particular facts and circumstances of this case was that of a prosecutor who had just prosecuted Monroe for violations of state law.

We next address the second step of the *McMillian* analytical framework: examining the role of county prosecutors under Washington law to determine whether they act for the state or their counties when prosecuting violations of state law. There is no bright-line rule. We must examine and balance all relevant factors.

We first note that the *McMillian* and *Pitts* courts were highly persuaded by the degree to which the state, rather than the county, was able to exert control over sheriffs and district attorneys.[27] Similarly, in Washington, the State exerts a considerable degree of supervisory control over county prosecutors. County prosecutors appear for and represent the State as well as counties and school districts "subject to the supervisory control and direction of the attorney general in all criminal and civil proceedings in which the state or the county or any school district in the county may be a party" and must submit reports to the governor.[28] The Attorney General is empowered to "[c]onsult with and advise" prosecutors and assist in the prosecution "when the interests of the state require[.]"[29] Moreover, if the Attorney General believes that the criminal laws are improp-

---

[26]*Coleman v. Kaye*, 87 F.3d 1491, 1499 (3d Cir. 1996).

[27]*Pitts*, 949 P.2d at 931-32; *McMillian*, 520 U.S. at 790.

[28]RCW 36.27.020(3), (11).

[29]RCW 43.10.030(4).

erly enforced in a county due to failure or neglect by the prosecutor, the Attorney General may "take such action in connection with any prosecution as the attorney general determines to be necessary and proper."[30] If that should occur, the prosecuting attorney has no authority over the case except as authorized by the Attorney General.[31] Prosecuting attorneys may be removed from office by the State Legislature.[32] One-half of the elected prosecuting attorneys' salaries are paid for by the State.[33] Moreover, prosecuting attorneys appear for and represent the State and the counties in court.[34]

The State counters that unlike Alabama sheriffs in *McMillian*, the Washington State Constitution does not include county prosecutors among its list of officials comprising the executive department.[35] Article XI, section 5 of the Washington State Constitution provides for the election of prosecuting attorneys in a section entitled "County Government." Prosecutors are elected by county voters;[36] must reside in the county;[37] act as legal advisors to the county;[38] and have their pay set by the county.[39] In addition, the State places great emphasis on the fact that

[30]RCW 43.10.090.

[31]*Id.*

[32]WASH. CONST. art. IV, § 9.

[33]RCW 36.17.020. However, the salary of deputy prosecutors is paid by the county.

[34]RCW 36.27.005; WASH. CONST. art. IV, § 27 ("The style of all process shall be, 'The State of Washington,' and all prosecutions shall be conducted in its name and by its authority.").

[35]WASH. CONST. art. III, § 1.

[36]RCW 36.16.030.

[37]RCW 36.27.010.

[38]RCW 36.27.020.

[39]*Id.*

county prosecutors in Washington are sometimes labeled as "county officers."[40]

However, under the *McMillian* analysis, these factors do not tip the balance in the State's favor. Mere labels are not determinative, and "county officials" may sometimes act for the State despite the county label:

> This is not to say that state law can answer the question for us by, for example, simply labeling as a state official an official who clearly makes county policy. But our understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law.[41]

Furthermore, the fact that the county prosecutor's authority is territorially limited is not dispositive.[42] The *McMillian* and *Pitts* courts both observed that district attorneys and state judges are often considered to be state officials, even though they have limited jurisdictions and are elected locally. "These characteristics are therefore consistent with an understanding of [the officials] as state officials who have been locally placed throughout the State, with an element of control granted to the officials and residents of the county which receives the [official's] services."[43] Lastly, the fact that Whatcom County has adopted home rule is of no consequence to this case, because the applicable home rule provision in the Constitution states that "[a]ll the powers, authority and duties granted to and imposed on county officers by general law, except the prosecuting attorney . . . shall be vested in the legislative authority of the county[.]"[44] The fact that the home rule provision specifically exempts county prosecutors from county legislative control provides

---

[40]RCW 36.16.030. In addition, prosecutors are not labeled as "state officers" under chapter 42.52 RCW (Ethics in Public Service).

[41]*McMillian*, 520 U.S. at 786.

[42]*Pitts*, 949 P.2d at 934.

[43]*McMillian*, 520 U.S. at 792; *Pitts*, 949 P.2d at 934.

[44]WASH. CONST. art. XI, § 4.

further evidence that prosecutors function as state officials when prosecuting state law.

The State has failed to cite any persuasive authority from state law to demonstrate that county governments exert substantial control over county prosecutors.[45] Most of the factors cited by the State in support of its position are ones that the *McMillian* and *Pitts* courts did not find persuasive. On the other hand, the County has shown that the Attorney General exerts substantial control over county prosecutors. Contrary to the State's view, county prosecutors are not on equal footing with the Attorney General.

■ We conclude that (1) Graham was "prosecuting state law" when he advised Weisenburger that Monroe could be released from jail, and, (2) county prosecutors in Washington represent the State, not their counties, when prosecuting violations of state law. Thus, we hold that Graham is a "state officer" or "state employee" under RCW 4.92.060, .070, .075, and .130, entitling him to defense and indemnification from the State.

### III

Finally, the State argues that the trial court lacked the authority to order the Attorney General to defend Graham because under RCW 4.92.070, the Attorney General has the exclusive authority to determine whether or not to accept a tender of defense. The State also notes that state law is unclear regarding which funding source would be appropriate for Graham's defense and argues that Graham should not be indemnified by the state liability account[46] because it is financed through annual premiums assessed to state agencies, and Whatcom County has not contributed to the fund.

---

[45]At oral argument, the State urged us to consider the effect of *Carter v. City of Phila.*, 181 F.3d 339 (3d Cir. 1999). However, *Carter* is not on point. That case addressed the question of whether the Pennsylvania district attorney's office is entitled to immunity under the Eleventh Amendment of the U.S. Constitution, not whether a government employee acts for the state or the county when engaged in particular activities.

[46]RCW 4.92.130.

Under RCW 4.92.070, "[i]f the attorney general shall find that [the official's] acts or omissions were, or were purported to be in good faith, within the scope of that person's official duties . . . said request shall be granted[.]" This language, however, should not be interpreted to mean that the trial court is powerless to review the Attorney General's decision. The statute states that if certain conditions are met, the Attorney General "shall" defend the official. There is no room for discretion in this standard. Therefore, if a trial court finds that the statutory conditions for defense were met, it follows that the Attorney General wrongly rejected the request. Lastly, we note that Graham should not be deprived of state defense and indemnification merely because there may be questions as to which state fund should be used for that purpose.

Affirmed.

AGID, A.C.J., and WEBSTER, J., concur.

Review denied at 141 Wn.2d 1001 (2000).