**FILED**
**MARCH 11, 2025**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**



IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 39680-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| TIM MCMANIS, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — If the State and the accused enter a plea agreement, under which the defendant agrees to plead guilty and the State agrees to return to him personal property seized, and if the defendant serves his time in prison but the State destroys the property before returning it to the defendant, should the superior court grant the accused a remedy in the criminal proceeding? The superior court ruled that it could provide the accused no remedy. In this novel setting, we disagree and remand for the superior court to fashion an appropriate remedy.

## FACTS

A 2016 sting operation caught Tim McManis answering a Craigslist advertisement crafted to appeal to one interested in sex with a young family. At the time of McManis'

arrest, the Washington State Patrol (WSP) seized McManis' ZTE Tracfone, a Nokia Tracfone, two Samsung Galaxy tablets, a WDD My Passport external hard drive, compact discs, digital video discs, an HP laptop, and a desktop computer.

On July 8, 2016, the State of Washington charged Tim McManis with two counts of attempted rape of a child in the first degree and one count of attempted rape of a child in the second degree. The State did not allege the property seized was contraband and agreed that McManis owned the objects. Over a period of months, defense counsel and the prosecutor negotiated a plea agreement, under which McManis would plead guilty to second degree assault with sexual motivation.

On February 20, 2020, the superior court entertained the entry of a plea from Tim McManis. The supervisor of the prosecutor assigned to prosecute the case appeared on behalf of the State. McManis' counsel and the supervisor discussed and refined the plea agreement at the hearing. The attending prosecutor agreed to the return of McManis' property after one year. According to defense counsel, the State customarily wishes to retain seized property for one year in the event the defendant attempts to withdraw a guilty plea.

A handwritten note on the statement of defendant on plea of guilty read:

> Property to be returned to defendant or his designee 12 months after sentencing if no objection from the state.

Clerks Papers (CP) at 12. Henceforth we alliteratively refer to this sentence in the plea agreement as the "property promise." During the February 20, 2020, plea hearing, the superior court reviewed the agreement with McManis:

> And regarding the agreement between you and the State, if you plead guilty to one count of assault in the second degree with sexual motivation, which holds a range of three to nine months, plus the 24-month enhancement, your attorney can argue for a departure downwards to zero months, leaving only 24-month enhancement, with the requirement that you do register for life, as I just indicated, and life community custody as well. *And the same agreement regarding a return of property*, as Ms. McMannis [sic] had, and *the State will not object to that after a period of 12 months*.

Report of Proceedings (RP) (Feb. 20, 2020) at 7 (emphasis added).

On April 8, 2020, the superior court sentenced Tim McManis to twenty-seven months. At sentencing, the prosecuting attorney assigned to the case, rather than his supervisor, represented the State. The judgment and sentence signed by the court did not include the property promise.

While the Department of Corrections imprisoned Tim McManis, his seized property remained with the WSP. On December 17, 2020, the Prosecuting Attorney's office sent notice to Jeffery Hall, the Property and Evidence Custodian for WSP, authorizing the release of Tim McManis' property to McManis. The deputy prosecutor assigned to the case, rather than the supervisor who had negotiated the terms requiring the return of property, sent the notice to Hall.

3

On December 23, 2020, six days after the notice to release the promised property, WSP transferred the seized property to the Missing and Exploited Children's Task Force, where the media was wiped. On January 6, 2021, WSP Evidence Custodian Jeffery Hall sent, to Tim McManis, at the residence on file with WSP, written notice regarding the disposition of his property. At that time, McManis remained in prison under the custody of the Department of Corrections. On January 15, 2021, Hall received notice that his January 6 letter to McManis was undeliverable. On March 10, 2021, the WSP placed Tim McManis' seized property in a disposal bin for eventual destruction.

On June 2, 2021, Tim McManis' attorney emailed the prosecutor:

> Tim McManis is requesting return of this property from case # 16-1-02595-2.
> It was part of his plea bargain that his property would be returned 12 months after sentencing. He was sentenced over a year ago.
> Please let me know if I can have your telephonic approval for an order.

CP at 109.

On June 8, 2021, the WSP destroyed Tim McManis' property at the biennial Assured Evidence Disposal Burn in Spokane. On June 16, 2021, the prosecutor replied to McManis' counsel's email:

> The wording in the statement on plea is that the defendant can get his property back if there's no objection from the State. I've reached out to law enforcement to confirm their stance on the release of the property.

CP at 107.  On June 23, 2021, despite the destruction of the seized property, WSP

Detective Sergeant Dan McDonald responded to the assigned prosecutor:

> I have confirmed that Tim and Sandra McManus' property is available for release at your request.  I've cc'd Jeff Hall, our evidence custodian, and they can reach him at 509-227-6620.

CP at 112.  The prosecutor replied to McDonald:

> Great, thanks Dan!
> Do you need an order to release the property or is an email from me sufficient?
> The State agrees to release the property in the Tim McManis case, case # 16-1-02595-2.

CP at 112.

Later on June 23, WSP Evidence Custodian Jeffery Hall emailed Detective

Sergeant Dan McDonald to inform him:

> Evidence in this case was already processed for destruction.  I received the "release property" notice from the prosecutor back on 12/17/2020.  The media was transferred to MECTF and wiped on 12/23/2020.  60 day letters were mailed out to both defendant's [sic] on 1/11/2021.  Both failed to respond to those letters.  As a result, all items were destroyed per WSP policy on 6/8/2021 at the biennial Assured Evidence Disposal Burn in Spokane.
> I have the certified mailings and receipts as well as the evidence documents showing destruction.  Let me know if you need any of it.

CP at 111.

On June 24, 2021, Detective Sergeant Dan McDonald emailed the prosecutor:

> It appears the McManus [sic] property has already been through the return process and ultimately destroyed per

5

> our policy due to no response from either McManus [sic]
> party. Please see PEC Hall's email below.

CP at 111. The prosecutor forwarded the news to defense counsel in a terse email:

> Hi, . . . .
> It appears that the property was destroyed per WSP policy.
> Thanks.

CP at 110. Tim McManis' counsel swiftly replied:

> I'll let Mr. McManis know but I think he's entitled to a better explanation about how this occurred.
> It was part of his plea agreement that Mr. McManis' property would be returned to him 12 months after sentencing if no objection from the State.
> Sentencing occurred on 4/8/20.
> Is WSP correct that your office sent a release of property to them on 12/17/20? That would have been less than 12 months after sentencing. Who sent WSP that notice?
> Where did WSP mail the notice to Mr. McManis? What address did they use?
> Please advise.

CP at 110. The prosecutor's office never replied.

### PROCEDURE

Tim McManis filed a motion seeking specific performance of the agreement to return his property or, alternatively, compensation for the value of any property destroyed in breach of his plea agreement. The State filed a responsive brief entitled "STATE'S RESPONSE TO MR. MCMANIS'S MOTION TO WITHDRAW HIS GUILTY PLEA." CP at 150. Nevertheless, McManis did not ask to withdraw his guilty plea. The State

6

characterized McManis' motion as an untimely collateral attack on his judgment and

sentence. The State also argued that it did not breach the agreement because the

prosecuting attorney's office fulfilled the promise when, on December 17, 2020, it asked

the WSP to release McManis' property. Finally, the State argued that specific

performance was impossible, such that McManis lacked any remedy in criminal court.

The superior court entertained argument in response to Tim McManis' motion.

The State's counsel then argued that McManis could not obtain specific performance

because of destruction or loss of property. Counsel suggested that McManis seek a civil

remedy against the WSP. The State's attorney added that the plea agreement was not

clear "to the State that it must wait at least 12 months to release property." RP (March

24, 2023) at 15-16. The State did not argue against the enforceability of the agreement,

however. Instead, State's counsel proclaimed:

> However, Your Honor, the issue in this case is the remedy. Mr.
> Harget [defense counsel] keeps – Mr. McManis keeps asking for specific
> enforcement. Specific enforcement is not possible.

RP (Mar. 24, 2023) at 11.

In its oral ruling, the court remarked:

> At this time I'm denying the motion respectfully. I don't believe it
> is practical to order specific performance when it's known from the facts
> that this—that it's not possible to return the property. There's no dispute
> that this property is destroyed. Ordering specific performance is an
> impossibility at this time. With respect to the remedy, it was made clear
> it's not a request to withdraw the plea given the jeopardy that he would be

exposed to; it would be a collateral attack and time-barred. The only
financial remedy the court could provide potentially is a— a sanction of
some type; but I don't find that the prosecutor's conduct was willful,
malicious, or of any intention. It's simply probably a lack of familiarity
with the intricate details of how evidence is released and processed. Also
there was no certainty in the plea agreement that he would get the—this
property back. There was not a guarantee that was bargained for. I'm
simply respectfully denying the motion. There's no statutory mechanism
for the court to award any type of costs in this circumstance. I think Ms.
Stearns [deputy prosecuting attorney] is correct. The—the available
remedy is to seek a potential civil claim against whoever may be involved.
I won't suggest which parties may be named, and there's a lot of factual
discovery that would need to be conducted to see whether agencies and
other actors involved in this were negligent or intentional or followed
through with their statutory obligations. But again, that's for a separate
civil action. At this time the court does not provide any remedy and
respectfully denies the motion.

RP (Mar. 24, 2023) at 18-19. The superior court entered a handwritten order denying

Tim McManis' motion. In a section of the order entitled "Finding", the court wrote:

"oral record incorporated." CP at 203.

## LAW AND ANALYSIS

We quote Tim McManis' assignment of error asserted in his brief because of a

challenge by the State.

The trial court erred by concluding that, because specific
performance was unavailable, it could not grant Mr. McManis any remedy
for the State's breach of the plea agreement.

Br. of Appellant at 2. Thus, on appeal, McManis asks this court to grant him a remedy

for the State's destruction of his personal property. In addition to asserting a breach of

the plea agreement, McManis contends that the trial court violated his due process rights when refusing a remedy for the breach. McManis asks that we remand to the superior court for the superior court to fashion a remedy, rather than our initially specifying the remedy to be awarded.

The State asks this court to decline to review the merits of Tim McManis' appeal because McManis failed to properly assign error in his opening brief. In the event we reach the merits of the appeal, the State contends the agreement to return the property cannot be enforced under contract law. The State also argues that the superior court cannot provide a remedy in the confines of this criminal prosecution.

## Assignment of Error

We first answer the State's contention that Tim McManis failed to assign error to the court's supposed finding or conclusion that the plea agreement provision for the return of property was too vague to qualify as a guarantee. According to the State, McManis needed to challenge the superior court's ruling rejecting the formation of a contract, and McManis only challenges the ruling on the unavailability of specific performance as a remedy. The superior court mentioned both vagueness of the agreement and unavailability of a remedy during its oral ruling.

In response, Tim McManis contends that the superior court only mentioned uncertainty in the agreement in the context of rejecting sanctions against the State for the

destruction of his property. According to McManis, the superior court never found or ruled that no breach occurred because of an ambiguity. We note that the superior court commented that the plea agreement failed to provide certainty that the State would return McManis' property, but we agree with McManis that the court may have limited this comment to the context of sanctions. Regardless, the superior court did not expressly reject the enforceability of the promise to return the property in specific or the plea agreement in general.

Under RAP 10.3(a)(4), an appellant's brief must include:

> A separate concise statement of each error a party contends was made by the trial court, together with the issues pertaining to the assignments of error.

In turn, RAP 10.3(g) declares:

> The appellate court will only review a claimed error which is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto.

Despite the literal meaning of these rules, when a party's brief identifies the part of the decision he challenges, we will overlook the party's failure to specifically assign error to it. *In re Disciplinary Proceeding Against Conteh*, 175 Wn.2d 134, 144, 284 P.3d 724 (2012). We read Tim McManis' opening brief as challenging any reason given by the court to withhold a remedy from him. The unenforceability of the promise to return property relates to the rebuff of a remedy. The State has not been prejudiced by any

10

shortcoming in the assignment of error. Both parties lengthily briefed the question of whether an enforceable contract existed.

RAP 1.2(a) encourages this court to address the merits of an appeal rather than rejecting an appeal because of noncompliance with procedural rules. RAP 1.2(c) allows this court to waive procedural rules to serve the ends of justice. Modern rules of procedure are intended to allow the court to reach the merits of an appeal, as opposed to disposing the matter on technical niceties. *Mine Holding Trust v. Pavlish*, 32 Wn. App. 727, 738, 559 P.3d 517 (2024).

The State never denied before the superior court that the promise to return property or the plea agreement was enforceable. The State never argued that the agreement contained ambiguities. To the contrary, the State insisted that Tim McManis could not withdraw his plea. Thus, on appeal, we could refuse to address arguments of the State that seek to void the property promise. But, McManis does not seek to preclude these State arguments. Both parties extensively briefed the question of enforceability of the property promise.

Enforceability of the Plea Agreement

Now that Tim McManis has fulfilled his end of the bargain, the State disavows the enforceability of its plea agreement with McManis. In so doing, the State sometimes implies that the whole agreement is unenforceable, while other times it specifies that only

11

its promise to return McManis' property lacks enforceability. At still other times, the State limits the unenforceability of the agreement to the remedy of specific performance.

When attacking the validity of the plea agreement, the State arrays a stable of contentions. First, the property promise was illusory. Second, the court may not grant specific performance because of an ambiguity in the agreement. Third, the entity that stored the equipment was the WSP, an entity distinct from the prosecuting attorney's office, and the prosecutor cannot bind the WSP to perform any acts. Fourth, the property promise was illegal because it conflicted with statutes controlling the WSP's handling of seized property. Fifth, in an argument that does not attack the validity of the property promise, the State argues it fulfilled the promise when the prosecuting attorney's office contacted the WSP to release the property. Sixth, Tim McManis is to blame for the destruction of the property because his counsel did not timely ask for the return of the property. The unrelenting arguments of the State prolong this opinion.

Illusion

We discuss the phenomenon of plea bargaining and rules attended to plea agreements. Some critics denounce plea bargaining for persuading innocent accused to admit crimes never committed, for creating perverse incentives for lawyers and judges, and for penalizing accused who exercise the constitutional right to trial. Nevertheless, plea bargaining remains the practice throughout Washington State and lands beyond.

A plea agreement is a contract between the State and the defendant. *State v. Sledge*, 133 Wn.2d 828, 838, 947 P.2d 1199 (1997). A plea agreement functions as a contract in which the defendant exchanges his guilty plea for some bargained-for concession from the State. *State v. Sledge*, 133 Wn.2d 828, 838-40 (1997); *State v. Hunsicker*, 129 Wn.2d 554, 559, 919 P.2d 79 (1996). Courts analyze a plea agreement in accord with contract principles. *State v. Sledge*, 133 Wn.2d 828, 838-39 (1997). Once approved by the court, the agreement binds the State. *State v. Schaupp*, 111 Wn.2d 34, 38, 757 P.2d 970 (1988). The State has a contractual duty of good faith, requiring that it not undercut the terms of the agreement, either explicitly or implicitly. *State v. Jerde*, 93 Wn. App. 774, 780, 970 P.2d 781 (1999).

The integrity of the plea bargaining process requires that, once the trial court has accepted the plea, the court cannot ignore the terms of the bargain, unless the defendant chooses to withdraw the plea. *State v. Bisson*, 156 Wn.2d 507, 520, 130 P.3d 820 (2006). Harmless error review does not apply when the State breaches a plea agreement. *State v. MacDonald*, 183 Wn.2d 1, 8, 346 P.3d 748 (2015); *State v. Carreno–Maldonado*, 135 Wn. App. 77, 87-88, 143 P.3d 343 (2006). An alleged breach of a plea agreement by the State is an issue of constitutional magnitude that can be raised for the first time on appeal. *State v. Sanchez*, 146 Wn.2d 339, 345-46, 46 P.3d 774 (2002).

Even members of today's oldest generation may be surprised to learn that plea

bargaining was formerly veiled in roses, shrouded in secrecy, and deliberately concealed

by participating defendants, defense lawyers, prosecutors, and even judges. *Santobello v.*

*New York*, 404 U.S. 257, 261-62, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971). In 1971, the

United States Supreme Court unswaddled this cloak, recognized reasons for the plea

bargaining process, and sanctioned the process:

> The disposition of criminal charges by agreement between the
> prosecutor and the accused, sometimes loosely called 'plea bargaining,' is
> an essential component of the administration of justice. Properly
> administered, it is to be encouraged. If every criminal charge were
> subjected to a full-scale trial, the States and the Federal Government would
> need to multiply by many times the number of judges and court facilities.
> Disposition of charges after plea discussions is not only an essential
> part of the process but a highly desirable part for many reasons. It leads to
> prompt and largely final disposition of most criminal cases; it avoids much
> of the corrosive impact of enforced idleness during pretrial confinement for
> those who are denied release pending trial; it protects the public from those
> accused persons who are prone to continue criminal conduct even while on
> pretrial release; and by shortening the time between charge and disposition,
> it enhances whatever may be the rehabilitative prospects of the guilty when
> they are ultimately imprisoned.

*Santobello v. New York*, 404 U.S. 257, 261-62 (1971).

Although courts adjudge a plea agreement to be a contract, courts also

acknowledge a plea agreement to possess constitutional dimensions. The Ninth Circuit

Court of Appeals wrote:

> Not only is the government mistaken in treating Barron's motion as
> an attack on the plea agreement, but as the government acknowledges its

14

reliance on contract law is by analogy, and the analogy is not perfect. A plea bargain is not a commercial exchange. It is an instrument for the enforcement of the criminal law. What is at stake for the defendant is his liberty. On rescission of the agreement, the prisoner can never be returned to his "original position": he has served time by reason of his guilty plea and his surrender of basic constitutional rights; the time he has spent in prison can never be restored, nor can his cooperation in his punishment. What is at stake for the government is its interest in securing just punishment for violation of the law and its interest that an innocent act not be punished at all. The interests at stake and the judicial context in which they are weighed require that something more than contract law be applied. This court has on other occasions declined to extend the contract law analogy to invalidate a plea bargain based on a mutual mistake of law.

*United States v. Barron*, 172 F.3d 1153, 1158-59 (9th Cir. 1999) (citations omitted).

Washington jurisprudence also recognizes the constitutional implications of a plea agreement. The Washington Supreme Court echoed the Ninth Circuit Court of Appeals, when the state high court wrote:

But plea agreements are more than simple common law contracts. Because they concern fundamental rights of the accused, constitutional due process considerations come into play. Due process requires a prosecutor to adhere to the terms of the agreement. The defendant's underlying contract right is constitutionally based and therefore reflects concerns that differ fundamentally from and run wider than those of commercial contract law. Fairness is mandated to ensure public confidence in the administration of our justice system. The State must comply with the terms of a plea bargain agreement. When the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise, and hence his conviction cannot stand.

*State v. Sledge*, 133 Wn.2d 828, 839-40 (1997) (citations omitted).

15

Constitutional due process requires a prosecutor to adhere to the terms of the agreement. *State v. MacDonald*, 183 Wn.2d 1, 9 (2015). Plea agreements concern fundamental rights of the accused and thus are more than simple common law contracts. *State v. MacDonald*, 183 Wn.2d 1, 9 (2015). By pleading guilty to a crime, defendants waive significant rights. These rights include the right to a jury trial, the right to confront accusers, the right to present witnesses in his defense, the right to remain silent, and the right to have the charges against him proved beyond a reasonable doubt. *Santobello v. New York*, 404 U.S. 257, 264 (Douglas, J., concurring). Nevertheless, in exchange for these waivers, the defendant receives the benefits of a bargain. When the State breaches a plea agreement, it "undercuts the basis for the waiver of constitutional rights implicit in the plea." *State v. Tourtellotte*, 88 Wn.2d 579, 584, 564 P.2d 799 (1977).

The accused deserves the benefit of his plea bargain. *State v. Tourtellotte*, 88 Wn.2d 579, 585 (1977). If courts do not enforce the plea agreement, the State may "play fast and loose" with an accused's constitutional rights. *Courtney v. State*, 341 P.2d 610, 612 (Okla. 1959). If a defendant cannot rely on an agreement made and accepted in open court, the fairness of the entire criminal justice system crumbles. *State v. Tourtellotte*, 88 Wn.2d 579, 585 (1977).

*State v. Tourtellotte*, 88 Wn.2d 579 (1977), illustrates the hallowedness of a plea agreement. As a result of plea bargaining, Charles Tourtellotte agreed to plead guilty on

16

an arson charge. In return, the prosecuting attorney agreed not to pursue any larceny charge, (2) to make no recommendation regarding sentencing, and (3) to recommend continued release on bond pending presentence investigation. The prosecuting attorney uttered, during the plea hearing, not the slightest suggestion that this agreement would not or should not be honored. When the parties reappeared for sentencing, the alleged victims of the arson appeared and objected strongly to the plea bargaining. After listening to the victims and counsel for both parties, the court granted the State's motion to nullify the plea of guilty to second degree arson, and the court directed the prosecution to proceed to trial. Later, the State in a separate prosecution charged Tourtellotte with three counts of grand larceny. A jury convicted Tourtellotte of the charges.

In *State v. Tourtellotte*, the Washington Supreme Court reversed based on the plea agreement entered in the earlier prosecution. The court taught that the trial judge may not ignore an agreement between the parties and earlier approved by the court "simply because of the exigencies of the moment." *State v. Tourtellotte*, 88 Wn.2d 579, 584 (1977). Charles Tourtellotte lacked any blame for the prosecutor's failure to advise the alleged victims of the plea negotiations. Tourtellotte should not suffer as a result of the State's oversight. If a defendant cannot rely on an agreement made and accepted in open court, the fairness of the entire criminal justice system would be thrown into question. No attorney in the state could in good conscience advise his client to plead guilty and

strike a bargain if that attorney cannot be assured that the prosecution must keep the bargain and not subvert the judicial process. The court ruled that the trial court erred when granting the State's motion to annul the plea.

Despite agreeing that it approved the release of the seized property to Tim McManis, the State contends the court may not enforce the property promise because the agreement was a mere illusion. As the argument goes, the State never promised not to object to the release of the property. Presumably, the State contends it could object for any reason or no reason.

We reject the State's reliance on an illusionary property promise for four reasons. First, the law imposes a duty of good faith on the State if it sought to object to the return of the property. Second, the State gave its consent in June 2021. Third, Tim McManis performed his end of the bargain. Fourth, the contract doctrine of an illusionary promise does not belong in plea bargaining jurisprudence.

A contract requires an offer, acceptance, and consideration. *Christiano v. Spokane County Health District*, 93 Wn. App. 90, 95, 969 P.2d 1078 (1998). If a party retains an absolute right not to perform at all, the agreement lacks consideration. *Felice v. Clausen*, 22 Wn. App. 608, 611, 590 P.2d 1283 (1979). When the provisions of an agreement leave the promisor's performance entirely within its discretion and control, the promise is illusory. *Felice v. Clausen*, 22 Wn. App. 608, 611 (1979).

Other principles limit a contracting party from escaping a contract because of a sham promise. The court will avoid interpretations of the promise that would render contract obligations illusory. *Taylor v. Shigaki*, 84 Wn. App. 723, 730, 930 P.2d 340 (1997). The court will read into a contract that allows one party to withhold consent to performing an act an implied duty of good faith and fair dealing that obligates it to cooperate so that the other party may obtain the full benefit of his performance. *Cavell v. Hughes*, 29 Wn. App. 536, 539, 629 P.2d 927 (1981). The promisor must exercise its subjective judgment honestly and in good faith pursuant to the implied covenant of good faith and fair dealing. *Storek & Storek*, *Inc. v. Citicorp Real Estate, Inc.*, 100 Cal. App. 4th 44, 60, 122 Cal. Rptr. 2d 267 (2002).

*State v. Sledge*, 133 Wn.2d 828, 840 (1997), recognizes the prosecutor's good faith obligation to effectuate a plea agreement. Just as there is an implied duty of good faith and fair dealing in every contract, the law imposes an implied promise by the State to act in good faith in plea agreements. *Badgett v. Security State Bank*, 116 Wn.2d 563, 569, 807 P.2d 356 (1991); *State v. Marler*, 32 Wn. App. 503, 508, 648 P.2d 903 (1982). The State does not act in good faith when it raises as a defense its right to object to the return of the property when both of its actors, the prosecuting attorney's office and the WSP, sent email consenting to the return.

Tim McManis executed his obligations under the plea agreement such that the court must waive any lack of mutuality in promises. Mutuality in each clause of a contract is not required when consideration is given for the contract as a whole. *Howell v. Murray Mortgage Co.*, 890 S.W.2d 78, 87 (Tex. App.-Amarillo 1994). The test for mutuality is applied and determined when enforcement is sought, not when the promises are made. *Cherokee Communications*, *Inc. v. Skinny's, Inc.*, 893 S.W.2d 313, 316 (Tex. App.-Eastland 1994). Though a contract be void for lack of mutuality when entered, when the party seeking to enforce the agreement has partly performed in a manner contemplated by the agreement, such benefit to the breaching party constitutes an equitable consideration to the breacher and renders the entire contract valid and enforceable. *Hutchings v. Slemons*, 141 Tex. 448, 174 S.W.2d 487, 489 (1943); *O'Farrill Avila v. Gonzalez*, 974 S.W.2d 237, 243 (Tex. App. 1998).

In *Vanegas v. American Energy Services*, 302 S.W.3d 299 (Tex. 2009), an employer promised to pay five percent of the proceeds of a sale or merger of the company to employees still employed at the time of the sale or merger. When the employees sued to enforce the agreement, the employer argued that, because the employees were at-will employees, any promise was illusory and therefore not enforceable. The company could have avoided the promise by firing the employees at any time. Thus, according to the employer, its promise was conditioned on an event

20

totally within its control.  The trial court and Court of Appeals adopted the employer's

position.  The Texas Supreme Court reversed.  The court reasoned that an illusory

promise becomes enforceable when the promise induces the other party to perform.

The Ninth Circuit Court of Appeals, in *United States v. Partida-Parra*, 859 F.2d

629, 634 (9th Cir. 1988), refused to even allow the government to assert that, under

contract principles, the parties never formed an enforceable agreement.  After the accused

and the government had reached a plea agreement, an assistant United States Attorney

not involved in the prosecution brought a separate prosecution that breached the

agreement.  When the accused sought to enforce the contract, the government argued that

what we have here is a failure to communicate that led to the first attorney erroneously

agreeing to the plea.

The federal court wrote:

> We do not believe that the plea-agreement/contract analogy extends
> so far as to allow the district court to revisit an accepted plea to reconsider
> whether the "contract" was formed (as distinct from considering whether it
> was breached).  The contract analogy is imperfect.  The formation of
> binding plea agreements is governed not by the Uniform Commercial Code,
> but by the Federal Rules of Criminal Procedure, which requires, among
> other things, that the court approve the plea agreement and find it to have a
> factual basis.  Here, the defendant's plea of guilty was entered and accepted
> by the court in the presence of an Assistant U.S. Attorney (who had
> negotiated the plea and drafted the information). . . . If the substitute
> information was obviously mistaken, the AUSA could and should have
> objected at the time the plea was entered. . . . . [S]taff lawyers in a
> prosecutor's office have the burden of letting the left hand know what the

21

right hand is doing' or has done.

*United States v. Partida-Parra*, 859 F.2d 629, 634 (9th Cir. 1988).

The State repeatedly underscores that the property promise was not in the original offer forwarded by the State to Tim McManis. McManis' lawyer instead inserted the promise at the plea hearing when the prosecutor assigned to the case was absent. The State also offers handwriting analysis as to who drafted the property promise. Nevertheless, the State does not contend that the supervising prosecuting attorney who entered into the agreement was confused or lacked authority to bind the State. The State does not argue that its counsel lacked an opportunity to postpone the plea hearing if counsel deemed the property promise questionable or impossible to perform.

Ambiguity

The State maintains that an ambiguous agreement cannot be enforced by specific performance. In the commercial context, a contract, oral or otherwise, the court will not grant specific performance unless the precise act sought to be compelled is clearly ascertainable. *Emrich v. Connell*, 105 Wn.2d 551, 558, 716 P.2d 863 (1986). This principle extends to the context of plea agreements. *State v. Bisson*, 156 Wn.2d 507, 523-24 (2006); *State v. E.A.J.*, 116 Wn. App. 777, 784, 67 P.3d 518 (2003). A contract provision is ambiguous when its terms are uncertain or when its terms are capable of being understood as having more than one meaning. *State v. E.A.J.*, 116 Wn. App. 777,

784 (2003); *Martinez v. Miller Industries, Inc.*, 94 Wn. App. 935, 944, 974 P.2d 1261 (1999).

The State forwards two purported ambiguities in the property promise. First, the promise does not identify the promisor. Because the property promise employs the passive voice, the State asserts uncertainty as to who must return the property. According to the State, the agreement could be read to require the prosecuting attorney's office to return the property or could be read to demand the WSP to return the seized property. The second ambiguity, according to the State, involved the language granting the State the right to object. We already addressed the second purported ambiguity that concerns more an illusory promise than an ambiguity.

We do not challenge the rule that an ambiguous agreement should not be enforced. But we find no ambiguity in Tim McManis' plea agreement. The State was obligated to return the personal property. The State cannot act baffled as to who is responsible when its sovereignty holds blame. The State cannot avoid a promise by sundering its agents that acted on its behalf. The precise act was known to the State. It was to return McManis' property. What agency returned the property lacked import. If, as part of the plea agreement, McManis had agreed to surrender property to the State, the State would seek to enforce the agreement and decline to argue that it did not know to whom McManis should deliver the property.

23

The State blames Tim McManis' trial counsel for an ambiguous property promise. According to the State, defense counsel inscribed the ambiguous promise. Nevertheless, due process requires strict adherence to a plea agreement and this strict adherence demands holding the State to a greater degree of responsibility than the defendant for imprecisions or ambiguities in plea agreements. *State v. Blackwell*, 135 N.C. App. 729, 731, 522 S.E.2d 313 (1999). The defendant need not anticipate loopholes that the State might create in its own promises. *State v. Blackwell*, 135 N.C. App. 729, 731 (1999).

Washington State Patrol

According to the State, the WSP is a separate legal entity that the Prosecuting Attorney's Office cannot bind. The State adds that the Washington Attorney General's office, not a county prosecuting attorney, represents the WSP.

We note that the parties to the prosecution are Tim McManis and the State of Washington. We consider the Spokane County Prosecuting Attorney's Office, when bringing a prosecution on behalf of the State, and the WSP as both parts of the State of Washington. Respective statutes recognize the two entities as agents of the State. RCW 36.27.020(4) obligates the county prosecuting attorney to prosecute all criminal actions in which the State may be a party. RCW 43.43.010 describes the WSP as a department of state government.

The law views law enforcement officers as extensions of the prosecution when they are not assisting the court. *State v. MacDonald*, 183 Wn.2d 1, 14 (2015). The state constitution and decisional law recognizes that prosecutors are agents of the State when prosecuting violations of state law. *State v. Sledge*, 133 Wn.2d 828, 839 n.6 (1997); *Whatcom County v. State*, 99 Wn. App. 237, 993 P.2d 273 (2000). A prosecuting attorney depends on law enforcement agencies to conduct the necessary factual investigation that must precede the decision to prosecute. *State v. MacDonald*, 183 Wn.2d 1, 12 (2015). In turn, prosecutors must direct the activities of law enforcement. *State v. MacDonald*, 183 Wn.2d 1, 12 (2015).

During the prosecution of Tim McManis, officers from the WSP Human Trafficking Task Force performed as intermediaries between the prosecutor's office and WSP evidence technicians. By maintaining, analyzing, and releasing evidence at the direction of prosecutors, WSP became integral to the prosecutorial effort such that to permit WSP to undercut a plea agreement would, in effect, countenance the State's breach of promise. *State v. MacDonald*, 183 Wn.2d 1, 13 (2015).

*State v. MacDonald*, 183 Wn.2d 1 (2015), shreds the State's contention. The officer who investigated the crime appeared at the sentencing hearing and passionately asked the sentencing court to impose a sentence higher than that to which the State had agreed to recommend. Ronald MacDonald objected to the officer's comments. The

State's attorney informed the court that she had not anticipated the officer would contravene the plea agreement. The trial court reasoned that the officer appeared as a victim advocate, rather than an agent of the prosecutor. The sentencing court, in turn, imposed the sentenced recommended by the officer.

On appeal, in *State v. MacDonald*, the Supreme Court held that the investigating officer was functioning as an arm of the prosecution and should have been precluded from advocating against the plea bargain. The State breached the plea agreement by the officer undercutting the agreed sentencing recommendation. The Supreme Court relied both on contract principles and due process considerations.

In the pending prosecution, the State should have better communicated with itself. At the time of the entry of the plea agreement, the prosecutor knew or should have known that the WSP stored the property. The prosecuting attorney's office had worked with the WSP throughout the prosecution of Tim McManis. The attorney should have and could have notified the WSP of the agreement to return the property when the superior court signed the plea agreement. The State lacks any excuse in its left hand not knowing the agreement entered by the right hand.

The State, before the superior court at the 2023 motion hearing, did not distinguish between the Prosecuting Attorney's Office, who represents the State, and the WSP, an arm of the State. When the State entered the plea agreement in 2020, it never suggested

26

to Tim McManis or the superior court that it could not bind the WSP or that the WSP

needed to be a party to the agreement. The State should have never entered the plea

agreement if the prosecuting attorney lacked the authority to bind the actions of the WSP.

Illegality

As part of its defense to the motion for specific performance, the State contends

the law precluded the WSP from returning the seized property to Tim McManis. A

contract in conflict with statutory requirements is illegal and unenforceable as a matter of

law. *Failor's Pharmacy v. Department of Social & Health Services*, 125 Wn.2d 488,

499, 886 P.2d 147 (1994). This principle applies to plea agreements. *State v. Barber*,

170 Wn.2d 854, 870-71, 248 P.3d 494 (2011).

Other than mentioning a property disposal statutory scheme, the State fails to

identify the statutory language that precluded it from holding Tim McManis' personal

property until he reclaimed the property and the State registered no objection to the

return. The Washington Legislature allows the WSP to offload evidence that remains

unclaimed after the resolution of a case. RCW 65.35.020 declares in pertinent part:

> Whenever any personal property shall come into the possession of
> the officers of the state patrol in connection with the official performance of
> their duties and *said personal property shall remain unclaimed* or not taken
> away for a period of sixty days from the date of written notice to the owner
> thereof, if known, which notice shall inform the owner of the disposition
> which may be made of the property under this section and the time that the
> owner has to claim the property and in all other cases for a period of sixty
> days from the time said property came into the possession of the state

27

agency, unless said property has been held as evidence in any court, then, in that event, after sixty days from date when said case has been finally disposed of and said property released as evidence by order of the court, said agency may:

(1) At any time thereafter sell said personal property at public auction to the highest and best bidder for cash in the manner hereinafter provided;

(2) Retain the property for the use of the state patrol subject to giving notice in the manner prescribed in RCW 63.35.030 and the right of the owner, or the owner's legal representative, to reclaim the property within one year after receipt of notice, without compensation for ordinary wear and tear if, in the opinion of the chief, the property consists of firearms or other items specifically usable in law enforcement work. . . .;

(3) Destroy an item of personal property at the discretion of the chief if the chief determines that the following circumstances have occurred. . . .
. . . .

(5) At the end of one year, any unclaimed firearm shall be disposed of pursuant to RCW 9.41.098(2). Any other item which is not unsafe or illegal to possess or sell, but has been, or may be used, in the judgment of the chief, in a manner that is illegal, may be destroyed.

(Emphasis added.) Nothing in RCW 63.35.020 precludes the State, in the auspices of the

WSP, to agree to the return of a defendant's property. The statute may not even apply to

our circumstances, since the property never went unclaimed. Tim McManis always

claimed the personal property. If the WSP needed to comply with any statute before

returning the property to McManis, the State could have written the requirements into the

property promise.

Tim McManis' Fault

The State faults Tim McManis and his counsel for the destruction of the promised property. The State highlights that counsel did not ask for the return of the property until fourteen months after the signing of the plea agreement. The State emphasizes that the WSP sent notice to McManis at his last known address, before destroying the property.

The State, at the plea hearing, never warned Tim McManis that the WSP would follow some statutory protocol when returning his promised property. The State also did not suggest to McManis that he must keep either the prosecuting attorney's office or the WSP informed of his address. The prosecuting attorney's office knew that McManis sat in Department of Corrections' custody and could have alerted the WSP to his whereabouts. If fault falls on one party, the fault lies on the part of the State for failing to communicate to the appropriate agents about the agreement.

The property promise directed the State to return the personal property to Tim McManis twelve months after sentencing if no objection from the State. The agreement did not require McManis to request his personal property within a particular deadline. The language did not even require McManis to contact the State as a condition to its return.

Remedy

The superior court cannot return Tim McManis to his position before the State breached the plea agreement. The State destroyed McManis' personal property. McManis does not seek to withdraw his plea, given that he has served his sentence and would risk facing additional years of confinement. McManis deserves a remedy in the pending prosecution.

The State contends that the only remedy available to Tim McManis for a breach of the plea agreement by the State is withdrawal of his guilty plea, at least as far as this criminal prosecution is concerned. Sometimes the State suggests that McManis could bring a tort action against the State for loss of his property. Of course, if McManis brought a tort claim, other lawyers on behalf of the State would raise numerous objections to any recovery.

We recognize that Tim McManis has cited no Washington decision that enforces, within the confines of the criminal prosecution, a promise embedded in a plea agreement for the State to return property to the accused. We hold, nonetheless, that the defendant may specifically enforce the promise as part of the criminal proceeding for many reasons: the constitutional underpinning of a plea agreement, the constitutional rights surrendered by McManis, the strong public policy behind requiring the government to keep its promise, and the numerous Washington decisions that specifically enforce a plea

30

agreement as part of the prosecution. In the rare situation when the State prematurely destroys the property, the superior court may exercise its discretion by granting relief that best renders the accused whole.

The proper remedy for the breach of a plea agreement is to permit the defendant to elect to withdraw the guilty plea or to seek specific performance. *State v. MacDonald*, 183 Wn.2d 1, 21 (2015); *State v. Barber*, 170 Wn.2d 854, 855 (2011). Specific performance entitles a defendant to the benefit of his original bargain. *State v. Tourtellotte*, 88 Wn.2d 579, 585 (1977). Specific performance ensures that the defendant receives the promise for which he bargained. *State v. Barber*, 170 Wn.2d 854, 859 (2011). When the government breaches a plea agreement, a defendant is entitled to a remedy that restores the meaningfulness of his bargain. *United States v. VanDam*, 493 F.3d 1194, 1203 (10th Cir. 2007). A defendant is entitled to relief even if the government's breach did not ultimately influence his sentence. *United States v. Chavful*, 781 F.3d 758, 761-62 (5th Cir. 2015).

The State must be held to its promises through specific performance of the agreement. *Santobello v. New York*, 404 U.S. 257 (1971); *State v. Barber*, 170 Wn.2d 854, 865 (2011). The remedy of specific performance in the context of plea agreements applies when a defendant has been placed in a no-return position in reliance on the plea

31

agreement, such that essential fairness warrants specific performance. *People v. Weather*, 106 A.D.3d 1518, 1520-21, 964 N.Y.S.2d 860 (2013).

Although the defendant enjoys the initial choice of a remedy, the trial court is not necessarily bound by the defendant's choice. *State v. Bisson*, 156 Wn.2d 507, 517 (2006). Once the defendant has opted for one of the available remedies, the State bears the burden of demonstrating that the defendant's choice of remedy is unjust. *State v. Bisson*, 156 Wn.2d 507, 517 (2006). The State's burden requires a showing that compelling reasons exist not to allow the defendant's choice. *State v. Bisson*, 156 Wn.2d 507, 517 (2006). The trial court then determines whether those reasons are compelling and the defendant's choice of withdrawal or specific performance is unjust. *State v. Bisson*, 156 Wn.2d 507, 518 (2006).

A trial court has broad discretionary power to craft an equitable remedy to ensure substantial justice. *Cogdell v. 1999 O'Ravez Family, LLC*, 153 Wn. App. 384, 220 P.3d 1259 (2006). The court that accepted a plea bargain is best positioned to determine the appropriate remedy for the State's breach of the agreement. *State v. James*, 35 Wn. App. 351, 353, 666 P.2d 943 (1983).

The only decision we find, which includes a promise to return the accused's property as part of a plea agreement, comes from North Carolina. *State v. King*, 218 N.C. App. 384, 721 S.E.2d 327 (2012). The prosecutor and Valerie King agreed that, if King

pled guilty to one count of misdemeanor possession of a schedule III controlled substance, the State would dismiss the remaining charges. The State also agreed to return King's personal property, money, and jewelry. The prosecutor and King signed the agreement, and the trial court accepted it. The trial court then sentenced King to twelve months of probation with numerous conditions. The trial court included in the judgment "'defendant to receive her personal property, which is money and jewelry, from the [police department].'" *State v. King*, 218 N.C. App. 386 (2012). A half-year later King filed a motion for return of the seized property. The State responded in part that the United States Drug Enforcement Administration had seized $6,150 of the funds. The sentencing court ruled that the State had breached the plea arrangement. The sentencing court, however, ruled specific performance not a viable option and that rescission of the plea agreement was the only option. The court withdrew the plea and all the charges in the indictments that had been dismissed were reinstated, calendared and set for trial by the State.

On appeal, in *State v. King*, the North Carolina court did not consider this seizure of money by the federal government an excuse for nonperformance by the State. The court noted that Valerie King complied with her promise by submitting to the conditions imposed for probation. The risk of loss of the funds fell on the State who agreed to return the money to King. The State knew the law better than King and should have anticipated

the possible seizure of the funds by the United States. The court would not relieve the

State of a bad bargain.

The North Carolina court in *State v. King* disagreed with the trial court's decision

to rescind the plea agreement. King had already completed nine months of her probation

and she then faced an increased sentence for the charges. The Court of Appeals ordered

specific performance of the plea agreement. Specific performance did not require the

return of the exact funds seized by law enforcement. The trial court could decide how

specific performance applied in the case's unique facts.

Unlike in *State v. King*, Tim McManis' sentencing court did not include the

promise to return personal property in the sentencing order. But the North Carolina court

did not rest its decision based on incorporation of the promise in the order.

The Idaho court, in *McAmis v. State*, 155 Idaho 796, 317 P.3d 49 (Ct. App. 2013),

analyzed a court's limiting the defendant's remedy to vacating the guilty plea as the

remedy for the government's breach as nonsensical. The court likened the withdrawal of

the plea to rescission under contract law. Nevertheless, when one party breaches a

contract, the civil court does not rescind the contract. The court awards damages or

specific performance. So too, the government's breach of the plea agreement does not

render the agreement retroactively invalid. Likewise, if a defendant completes a task in

reliance on the plea agreement, withdrawal of the guilty plea could cause him to lose both the benefit of his bargain and his reliance interest.

Under *State v. King*, specific performance did not necessarily mean the return of the exact property seized by law enforcement. According to a California court, specific enforcement of a plea bargain agreement is actually a broad term covering several different types of relief. *People v. Kaanehe*, 19 Cal. 3d 1, 13, 559 P.2d 1028, 136 Cal. Rptr. 409 (1977). The remedy differs depending upon the nature of the breach and which party is seeking specific enforcement. *People v. Kaanehe*, 19 Cal. 3d 1, 13 (1977). When the breach is a refusal by the prosecutor to comply with the agreement, specific enforcement would consist of an order directing the prosecutor to fulfill the bargain. *People v. Kaanehe*, 19 Cal. 3d 1, 13 (1977).

The property seized in *State v. King* principally consisted of cash or fungible property. Tim McManis wishes specific performance of the property promise but no court can require the State to perform the impossibility of returning destroyed property. We know little about the nature, condition, and value of the personal property destroyed. We do not know if any videos of family or of sentimental value were on the equipment or the discs. We do not know if McManis would accept the State's delivering to him of similar equipment. On remand, the trial court should weigh these factors in awarding an

equitable remedy while specifically enforcing the agreement rather than requiring

McManis to withdraw his plea.

## CONCLUSION

We remand to the superior court to enforce the property promise. The court

should exercise its discretion when affording Tim McManis specific performance.

_____
Fearing, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Staab, J.